250 A.2d 711.

STATE *vs.* DANIEL KOOHY.

FEBRUARY 28, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This indictment[1] charges the defendant with the exhibition of obscene movies in violation of the provisions of G. L. 1956, §11-31-10, as amended. The trial was held before a justice of the superior court sitting without a jury. After the state had produced its evidence and rested, the defendant also rested. Thereafter the trial court found the defendant guilty as charged. While the defendant in this appeal is pressing several exceptions, we shall only consider his exception to the trial justice's decision.

The defendant was the proprietor of a restaurant in the city of Newport. He admitted that he owned the several reels of motion-picture film and projector which the police found in the back room of his restaurant during the search of his premises made in December 1964. A warrant for that search had been issued by the First District Court. The defendant also conceded that the films were obscene.

The bulk of the evidence presented by the state came from three boys who, at the time referred to in the indictment, were all 15 years of age. Two of these boys had worked at the defendant's restaurant as short-order cooks. One of them told the court that on a Saturday evening in November 1964, after he and a friend had attended a high school dance, they met with defendant who drove them to the restaurant. The restaurant was closed. Once inside,

---

[1] The indictment is inartfully drawn. Since the defendant did not see fit to challenge its legal sufficiency, we shall, for the purposes of disposing of this appeal only, forego any discussion of the apparent duplicitous nature of the charge.

defendant set the projector on the counter and using the door of a refrigerator for a movie screen, showed the boys two of the movies. This witness also stated that on a subsequent Sunday afternoon he and a co-worker went to the restaurant where they viewed the same movies. The restaurant was closed on Sundays but defendant had given the other boy a key to the premises which they had used to gain entry to the restaurant. The defendant was not present on this occasion.

The other youthful employee of defendant testified that he first saw defendant's movies when shown in a back hallway of defendant's premises. Also present at this time were defendant, who was the projectionist, and an unidentified adult. This witness's second viewing took place on a Sunday afternoon in September when the restaurant was closed. He was accompanied on this visit by two of his friends. He said he saw the movies a third time by himself. This witness's final viewing came on another Sunday afternoon in December. He went to the restaurant, as was his duty, to light the pilot under the coffee urn. Having attended to this chore, he and his friends set up the projector and ran the movies.

The third youth corroborated the incident following the dance related by the first witness. He also was present at one of the Sunday afternoon showings.

The relevant part of §11-31-10, as amended,[2] reads as follows:

"Every person who shall wilfully or knowingly sell, lend, give away, show, advertise for sale or distribute commercially to any person under the age of eighteen (18) years or has in his possession with intent to give, lend, show, sell, distribute commercially, or otherwise offer for sale or commercial distribution to any

---

[2]This is the language of the statute as it was in 1964 during the period of defendant's alleged criminal activity. In 1966, the legislature further amended this section by enacting P. L. 1966, chap. 259.

individual under the age of eighteen (18) years any pornographic motion picture * * * shall, upon conviction, be punished by a fine of not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000) or by imprisonment for not more than two (2) years, or by both such fine and imprisonment."

Throughout these proceedings, defendant has relied on our holding in *State* v. *Settle*, 90 R. I. 195, 156 A.2d 921, where we dealt with the provisions of the statute in question. There we specifically conditioned a conviction under this statute upon proof that the proscribed acts enumerated therein were undertaken for commercial gain. We stated at page 199:

"The title of §11-31-10 is 'Sale or exhibition to minors of indecent publications, pictures, or articles.' The word 'commercially' not only modifies the word 'distribute' but it modifies each one of the preceeding words, 'sell,' 'lend,' 'give away,' 'show,' and 'advertise for sale.' It is obvious from a reading of the statute that it is not directed against and does not embrace the father who gives to a youthful member of his family a book which comes under the ban of the law. The statute by its own terms is directed against those who, directly or indirectly for pecuniary gain, are possessing and handling publications of the sort described."

The trial court in finding defendant guilty recognized the necessity of proof as to the element of commercialism:

"The State proved beyond a reasonable doubt that the defendant had five pornographic motion picture films and a projector; that he kept these films and projector at his place of business; that he showed these films by means of the projector to persons under the age of 18 years; for none of these showings did he exact a charge in money; from the nature of defendant's business, a public restaurant, the place where the films were shown, namely, at his public restaurant, and, in the absence of evidence that the

showing was for any other purpose, it can be inferred, and the Court does infer, that the showing was for the purpose of attracting customers to his restaurant.

"A showing for such a purpose is a showing 'commercially' as that term is used in the statute. It is indirect commercialism as that term is used in *State vs. Settle, 90 R. I. 195; 156 A.2d 921 (1959)*.

"The defendant did these acts wilfully and knowingly.

"Accordingly, the defendant is guilty of the charge laid in the indictment."

In our opinion the inference drawn by the trial justice as to the purposes of defendant's possession and exhibition of obscene movies finds no support in the evidence. It is, therefore, erroneous and must be overturned. The defendant's behavior, despicable as it appears from the record, does not constitute a violation of the offense described in §11-31-10.

In any criminal prosecution the burden of proof as to each and every element of the offense charged is upon the state. *State v. Blood,* 68 R. I. 160, 26 A.2d 745. Those elements must be proven beyond a reasonable doubt before a conviction can lie. *State v. Rooks,* 62 R. I. 251, 4 A.2d 905. In the instant case, it was incumbent upon the state to prove that defendant's actions were motivated by the expectation of monetary reward—be it direct or indirect. Our reading of the record, however, convinces us that the prosecution wholly ignored and overlooked the necessity of proving this element. We feel the transcript is barren of any testimony that even remotely suggests that defendant undertook to show the movies for commercial gain.

An analysis of the testimony of the three teenagers reveals that they saw the movies seven times. On four of these occasions, the restaurant was definitely closed. As to the other three showings, the transcript gives no hint as to whether defendant's establishment was open for busi-

ness or not. There is not one shred of evidence relative to either the restaurant's clientele or their eating or viewing habits.

In any trial, the trier of fact may draw all reasonable inferences which flow from the evidence. An inference may be described as a deduction which the trier of fact is entitled to make from a proven or admitted fact. An inference must, however, be based on some evidence—either direct or circumstantial. A conclusion made in the absence of such evidence is not an inference but rather pure conjecture. See *State* v. *Meany,* 262 Minn. 491, 115 N.W.2d 247. No man may be convicted upon mere surmise.

On the state of the record, the defendant's conduct in the fall of 1964 remains an enigma. No reasonable explanation of his behavior can be found therein. In bringing the instant indictment, the state assumed the burden of proving that the defendant's possession and exhibition of obscene movies were prompted by a desire for financial gain. In the absence of any competent evidence which would tend to establish this element, the conclusion of the trial court that the defendant had violated the statute[3] cannot be upheld.

The defendant's exception to the decision is sustained and the case is remitted to the superior court for entry of a judgment for the defendant of not guilty.

---

[3]In 1966, the general assembly apparently recognized that a gap existed in the legislative wall which it had sought to erect between the flow of obscene material and young people. It enacted P. L. 1966, chap. 268, which provides that any person, regardless of his motive for doing so, who knowingly or willingly disseminates indecent publications, pictures, or articles to persons under the age of 18 shall be guilty of committing a crime. Included with the proscriptions of the statute is the showing of obscene motion pictures.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, *Luc R. LaBrosse,* Special Assistant Attorney General, for plaintiff.

*Dolbashian and Chappell, N. Jameson Chace,* for defendant.