399 A.2d 1237.

STATE *vs.* GARY P. O'ROURKE.

APRIL 12, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

JOSLIN, J. In May 1973, the defendant, Gary P. O'Rourke, was tried by a jury in the Superior Court on a three-count indictment. The trial justice directed a verdict in O'Rourke's favor on one of the counts,[1] but the jury found

---

[1]That count charged O'Rourke with the breaking and entering of a place of business in violation of G.L. 1956 (1969 Reenactment) §11-8-7.

him guilty of the burglary of the dwelling of one John Carter, in violation of G.L. 1956 (1969 Reenactment) §11-8-1, and of possession of burglary tools, in violation of §11-8-7. On appeal, he assigns as errors the denial of his motion for direction of a judgment of acquittal on the burglary charge and certain instructions to the jury on the possession charge.

John Carter lived in an apartment in the rear of a building that housed a drugstore, cobbler shop, and temporary employment agency. On January 28, 1973, two police detectives, having received information that there would be a break-in at the drugstore, staked out the premises. At about 8 o'clock in the evening, they observed defendant and two other men alight from an automobile behind the building. The defendant was carrying a sledge hammer; one of his companions carried a pillowcase with what appeared to be a handsaw protruding from it. The three men entered the Carter apartment through a door adjacent to the rear of the drugstore. Fifteen to twenty minutes later, they were observed hurriedly leaving through the same door. They were promptly apprehended.

Upon investigation, the arresting officers discovered that forcible entry had been gained into the Carter apartment and that various interior doors had been damaged. The bedroom wall adjoining the drugstore had been partially broken through, leaving a hole that exposed a brick surface behind the wall. On the floor beneath the hole, amid plaster and other debris, was a sledge hammer, a pillowcase, a handsaw, and an iron bar.

In Rhode Island the burglary statute, §11-8-1, incorporates the common-law definition of that crime. In *State* v. *Hudson*, 53 R.I. 229, 230, 165 A. 649, 650 (1933), burglary was defined as "the breaking and entering the dwelling house of another in the nighttime with the intent to commit a felony therein, whether the felony be actually committed or not."

The defendant concedes that there is ample evidence in this record justifying findings that he broke and entered

Carter's apartment, a dwelling house, in the nighttime. He contends, however, that there was no evidence that the break and entry were accompanied by an intent "to commit a felony therein." The "therein" requirement could be satisfied, he argues, only if he intended to commit a felony within that dwelling house but not by evidence that he broke and entered the apartment solely to gain access to the drugstore in which he intended to commit a felony. His construction of the statute finds support both among the early English texts, 3 Coke, *Institutes* 63 (London 1797),[2] 1 Hawkins, *Pleas of the Crown* 101 (3d ed. London 1739), 1 Hale, *Pleas of the Crown* 550 (London 1736), and more recently in case law in this country, *Porter* v. *State*, 243 A.2d 699 (Del. 1968); *State* v. *Watson*, 383 S.W.2d 753 (Mo. 1964).

The state, instead of meeting defendant's argument headon, proffers a tangential rebuttal.[3] Although conceding that defendant's underlying intention was to commit a theft in the drugstore, it nonetheless contends — and the trial justice agreed with its position when he refused to direct an acquittal on the burglary charge[4] — that the independent felony intended to be committed within the apartment was the breaking and entering of the drugstore with larcenous intent. The obvious shortcoming of this contention is that although the breaking into the drugstore could be and indeed

---

[2]An early definition of a common-law burglar was:

"A burglar (or the person that committeth burglary) is by the common law a felon, that in the night breaketh and entreth into a mansion house or another, of intent to kill some reasonable creature, or to commit some other felony within the same, whether his felonious intent be executed or not." 3 Coke, *Institutes* at 63.

[3]The state relies on the California case of *People* v. *Wright*, 206 Cal. App. 2d 184, 23 Cal. Rptr. 734 (1962). However, the California burglary statute construed in that case does not contain a "therein" requirement.

[4]In denying the motion for the direction of an acquittal on the burglary count, the trial justice said, "There is ample evidence in the record from which the jury could find or reasonably infer * * * [t]hat these three defendants * * * intended to commit a felony therein; the felony, of course, being the breaking and entering of the drugstore from inside the apartment."

was initiated on the apartment side of the common wall, the entry into the store could not occur within the apartment.

We agree with the state that defendant's argument is a technical one. But defendant's reliance on a technicality does not excuse the state from fulfilling its obligation to produce some evidence on the critical "therein" requirement of the crime of burglary. Its failure in this respect entitled defendant to the entry of a judgment of acquittal on the burglary count.

The defendant's other challenge is to the propriety of the trial justice's instructions to the jury regarding the possession of burglary tools charge. Section 11-8-7, upon which the possession indictment is based, provides, in pertinent portion, that it is a crime for a person to possess implements knowing that they are designed or adapted for the purpose of gaining entrance into a building "in order to steal therefrom money or other property, *or to commit any other crime*," with intent to use them for that purpose.[5] (Emphasis added.) The trial justice read the statute to the jury and also read to them the corresponding count of the indictment.[6] That

---

[5] General Laws 1956 (1969 Reenactment) §11-8-7 reads as follows:

> "Whoever makes or mends, or does any work connected with the making or reparation of, or has in his possession any engine, machine, tool, false key, pick lock, nippers, or implement of any kind adapted and designed for cutting through, forcing, breaking open or entering a building, room, vault, safe, or other depository, *in order to steal therefrom money or other property, or commit any other crime,* knowing the same to be adapted and designed for the purpose aforesaid, with intent to use or employ, or allow the same to be used or employed, for such purpose, shall be imprisoned not more than ten (10) years." (Emphasis added.)

[6] The possession of burglary tools count of the the indictment charged that the defendants

> "did have in their possession implements adapted and designed for \* \* \* breaking open and entering a building, room \* \* \* and other depository, *in order to steal money and other property therefrom,* they \* \* \* knowing the same to be adapted and designed for the purpose aforesaid, with intent to \* \* \* break open and enter a building, room \* \* \* and other depository in order to steal money and other property therefrom, in violation [of] §11-8-7, G.L.R.I., 1956, as amended, (Reenactment of 1969)." (Emphasis added.)

count, however, alleged that defendant possessed implements designed and adapted for breaking and entering a building or room "in order to steal money and other property therefrom." It did not include the language "or to commit any other crime."

The defendant argues that this discrepancy between the statute and the indictment made it possible for the jury to find him guilty because it might believe he possessed the implements for the purpose of gaining entrance to an enclosed place to commit some crime other than that of stealing "money and other property therefrom" as charged by the indictment.

An intent "to steal money and other property" from the drugstore was an essential element of the offense charged in the indictment and as such the state had the burden to prove it beyond a reasonable doubt. *See State* v. *Koohy,* 105 R.I. 197, 201, 250 A.2d 711, 714 (1969); *State* v. *Brown,* 97 R.I. 95, 99, 196 A.2d 138, 141 (1963); *cf. State* v. *Blood,* 68 R.I. 160, 162, 26 A.2d 745, 746 (1942). Whether the trial justice properly advised the jury that the state was so burdened depends upon how the challenged instruction, viewed in context, as a part of a whole, rather than in isolation, would be construed by a jury composed of ordinarily intelligent lay persons listening to it at the close of trial. *State* v. *Howard,* 114 R.I. 731, 741, 339 A.2d 259, 264 (1975); *State* v. *Carillo,* 113 R.I. 32, 41, 317 A.2d 449, 455 (1974); *State* v. *Reid,* 101 R.I. 363, 366, 223 A.2d 444, 446 (1966). If such a jury could reasonably find defendant guilty upon proof that he entered the apartment in order to commit a crime other than the theft of money and other property, the instruction was defective.

Certainly, the record in this case is replete with descriptions of activities that the hypothetical juror whom we use as a sounding board could reasonably believe to be crimes. The damage to doors inside Carter's apartment and the attempt to enter the drugstore by demolishing a wall are so obviously examples of criminal behavior that a juror could have found

criminal intent apart from the intent to steal money and other property. The instruction was confusing and misleading and, therefore, the conviction on the possession count cannot stand.

The defendant's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court.

*Dennis J. Roberts II*, Attorney General, *John S. Foley*, Special Assistant Attorney General, for plaintiff.

*William F. Reilly*, Public Defender, *Barbara Hurst*, Chief Appellate Attorney, *Dale G. Anderson*, Assistant Public Defender, for defendant.