STATE

v.

Ronald LEFEBVRE.

No. 91–93–C.A.

Supreme Court of Rhode Island.

June 18, 1992.

James E. O'Neil, Atty. Gen. William R. Guglietta, Jeffrey Greer, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Janice Weisfeld, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendant's appeal from a judgment of conviction entered in the Superior Court of one count of robbery and one count of burglary after trial by jury. Subsequent to the return of guilty verdicts on both counts, the trial justice denied a motion for new trial. The defendant was sentenced to concurrent terms of thirty years' imprisonment on each count, fifteen years to serve with fifteen years suspended and fifteen years' probation. The facts of the case upon which the indictment and the conviction were based are as follows.

On June 28, 1987, Victoria Martel (Martel) was asleep in the home that she shared with her aunt and uncle, Tammy and Ed McBarron (McBarrons), in the city of Providence. Since the McBarrons had left for a vacation in Maine on June 24, 1987, Martel was alone. At some point between 4:30 a.m. and 5 a.m. Martel was awakened by a person holding a hand over her mouth. As soon as she awoke, she recognized the person as Ronald Lefebvre, defendant. He was holding a kitchen knife to her throat and warned her not to scream. However, she did scream, and he muffled her cries by putting a sock into her mouth and a pillow over her head. He emphasized his order not to scream by punching her in the face.

Martel knew defendant because he had stayed with the McBarron family earlier during the month of June. He was ordered to leave the house on June 21, 1987, because of nonpayment of rent. He did not have a key and did not return to the premises after June 21, 1987, until the night of June 28. After tying Martel's hands and muffling her cries, defendant took $106 from her purse and left with the admonition that she not call the police until he had had time to get away. He further stated that he needed the money because somebody was after him. Before he left, defendant cut the telephone lines in the bedroom and in the kitchen.

After defendant had left, Martel went to the window and looked outside, hoping to determine with the aid of a street light whether defendant had left the vicinity. Martel then went to a neighbor's apartment to call the police. The telephone call took place at approximately 5 a.m. Patrolman James Galvin of the Providence police department arrived moments thereafter. He identified a living-room window as the point of entry.

The defendant left with the proceeds of Martel's first paycheck and never contacted her again for the purpose of returning the money.

In support of his appeal defendant raises three issues, two of which were briefed and the third of which was asserted in oral argument. These issues will be dealt with in the order in which they were raised by defendant. Further facts will be supplied as necessary to discuss the issues.

I

## THE MOTION FOR JUDGMENT OF ACQUITTAL ON THE CHARGE OF BURGLARY

The defendant argues the the trial justice erred in denying his motion for judgment of acquittal on the charge of burglary because the state failed to prove that the breaking and entering was committed in the nighttime as required for a charge of burglary. This court has held repeatedly that the crime of burglary as forbidden by G.L.1956 (1981 Reenactment) § 11–8–1 is an offense that has been defined at common law as "the breaking and entering the dwelling-house of another in the night time with the intent to commit a felony therein, whether the felony be actually committed or not." State v. Hudson, 53 R.I. 229, 230, 165 A. 649, 650 (1933); accord State v. O'Rourke, 121 R.I. 434, 399 A.2d 1237 (1979), and State v. Mollicone,

95 R.I. 59, 182 A.2d 612 (1962). The question presented by this case is whether the evidence was sufficient to establish that the breaking and entering took place during the nighttime. The general rule is set forth in *2 Wharton's Criminal Law and Procedure* § 431 at 54 (Anderson 1957):

> "In the absence of statute, the determination of night is not the setting and rising of the sun. Instead, it is deemed day although the sun has not yet risen or after it has set, if it is sufficiently light to discern a person's face. That is, visibility by daylight determines the existence of day."

In the case at bar Martel testified that when she became aware of defendant's presence, it was dark outside but she was able to see in her bedroom from the light cast by a street lamp that was located directly in front of the house and shone into her bedroom. All evidence concerning time was approximate.

 The trial justice took judicial notice that the time of sunrise on the day in question was 5:13 a.m. This court in *State v. Mollicone*, in determining whether an offense had been committed in the nighttime, used as an aid G.L.1956 § 31–24–1, which required that vehicle lights shall be displayed from one-half hour after sunset until one-half hour before sunrise. 95 R.I. at 61, 182 A.2d at 614. Applying this aid to the determination of the ability to discern a person's face, we are of the opinion that the state's evidence was sufficient to survive a motion for judgment of acquittal. Our role in respect to reviewing the denial of a judgment of acquittal is well settled. In passing on a motion for judgment of acquittal, the trial justice must view the evidence in the light most favorable to the state and must draw all reasonable favorable inferences that are consistent with the defendant's guilt. He or she may not consider the weight of the evidence or the credibility of the witnesses. *State v. Lamoureaux*, 573 A.2d 1176, 1181 (R.I.1990); *State v. Henshaw*, 557 A.2d 1204, 1206 (R.I.1989). In reviewing the trial justice's ruling on the motion, we must apply the same criteria.

In the case at bar Martel testified that when she became aware of defendant's presence, it was dark outside. She stated that this encounter could have begun as early as 4:30 a.m. After defendant had threatened her, muffled her cries with a sock and a pillow, tied her hands, and cut the telephone wires, he departed, taking Martel's money. It was necessary for Martel to go to a neighbor's apartment to make a telephone call. This call was made no later than 5 a.m. Indeed, it may well have been earlier, because Officer Galvin testified that he arrived at 141 Hendricks Street at approximately 5 a.m. The trial justice was entitled to infer from the evidence in the case that defendant had forced a window open in the dwelling prior to 4:30 a.m., had then equipped himself with a kitchen knife, and had gone to Martel's bedroom where he placed his hand over her mouth at or shortly after 4:30 a.m. This activity would have taken place well before the one-half hour prior to sunrise. When the evidence is viewed in the light most favorable to the prosecution and all reasonable inferences consistent with the guilt of the accused are drawn, the evidence was sufficient to justify the denial of a motion for judgment of acquittal.

## II

### THE MOTION FOR NEW TRIAL IN RESPECT TO THE CHARGE OF ROBBERY

 The defendant argues that the trial justice should have granted his motion for new trial on the robbery charge since the evidence was not sufficient to establish his intent to retain the money seized and permanently to deprive Martel of the same. There is no question that as an element of the crime of robbery, the prosecution must establish beyond a reasonable doubt that a defendant had the specific intent to deprive the victim permanently and completely of the use of his or her property. *State v. Brown*, 549 A.2d 1373 (R.I.1988); *State v. Robalewski*, 418 A.2d 817 (R.I.1980). It is further required that in passing upon a motion for new trial, the trial justice must

review all the relevant evidence adduced at trial in the light of the charge to the jury and, exercising his or her independent judgment, must pass upon the weight and the credibility of the evidence and must accept or reject conflicting testimony. *State v. Dame*, 560 A.2d 330, 333 (R.I.1989). In the case at bar the trial justice in his charge to the jury had stated that in order to find defendant guilty of the charge of robbery, the jurors must find inter alia that there was an intent permanently to deprive Martel of her property. The trial justice was highly impressed with the credibility of the victim in this case and found that her testimony supported each and every element of the crime of robbery. He commented:

> "The testimony was that this defendant walked away with the proceeds from her first paycheck and she never saw those proceeds thereafter. If that doesn't support the issue of depriving her wholly and permanently of her property, I don't know what does."

We believe that this common sense evaluation of the evidence clearly indicated that the trial justice performed his duty in accordance with the rule set forth in *State v. Dame, supra.* In the event that the trial justice, after his or her review of the evidence and testimony, agrees with the verdict of the jury, then the analysis is at an end. He or she may order a new trial only if the trial justice "has reached a different conclusion from that of the jury and if it is specifically found that the verdict is against the fair preponderance of the evidence and fails to do substantial justice." *Dame*, 560 A.2d at 333, (citing *State v. Henshaw*, 557 A.2d 1204, 1208 (R.I.1989)). In this case the trial justice did not err in denying defendant's motion for a new trial.

## III

### THE MOTION FOR NEW TRIAL IN RESPECT TO THE CHARGE OF BURGLARY

At oral argument counsel for defendant argued that the trial justice erred in failing to grant defendant's motion for new trial on the charge of burglary because the state failed to prove beyond a reasonable doubt that the offense had been committed in the nighttime. In applying the rule of *State v. Dame, supra,* we look to the response of the trial justice to the motion. He analyzed the evidence and determined:

> "[T]he end of this frightening episode was possibly around five o'clock. The beginning of the incident was long before that or sometime before that. The testimony of the victim was that the activity in the bedroom that this defendant participated in was for approximately fifteen minutes before the time she called the police. It was five o'clock before the police were called. So the time factor, if you want to use what the court took judicial notice of, would bring the time that this activity took place was prior to quarter to five, sometime before quarter to five and possible a short while after 4:30. So I'm satisfied in accepting the testimony of Miss Martel that this intrusion and the burglary occurred when it was still darkness, when visibility by daylight was not available to anyone."

Thus, the trial justice agreed with the verdict of the jurors whom he had properly instructed concerning the necessity of a finding that the crime of burglary must be committed during the nighttime. The jurors and the trial justice were entitled to draw the inferences that they did on the basis of the evidence presented. It is most important to note that the burglary was complete at the time the breaking and entering took place with the felonious intent. This breaking and entering of necessity took place sometime before the encounter with the victim. *See 3 Wharton's Criminal Law* § 334 at 205, (Torcia 1980). The trial justice did not err in denying the motion for new trial in respect to the crime of burglary.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.