404 A.2d 814.

STATE *vs.* REBECCA WILLIAMS.

JULY 24, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

Joslin, J. The defendant, Rebecca Williams, was indicted for robbery and conspiracy to commit robbery. At her arraignment in the Superior Court, she pleaded not guilty to both charges. Before the case was reached for trial, however, she requested leave to substitute pleas of guilty for her prior pleas. At the hearing that followed, the trial justice engaged in an extensive exchange with defendant and her counsel concerning the nature of the offenses charged and the consequences of her proposed change of pleas. Following that exchange he said that he was satisfied that there was a factual basis for the defendant's guilty pleas and that they were being offered voluntarily and intelligently. Accordingly, he granted her motion for a substitution of pleas, ordered that judgments of conviction enter, and continued the case for sentencing. Following receipt of a presentence report, he sentenced her to serve a term of 7 years at the Women's Reformatory.

Within a week after sentence was imposed, defendant filed a motion entitled, "Motion to Set Aside Guilty Plea, Vacate Sentence Imposed and Reinstate for Trial." Notwithstanding its title, nothing in the text of that motion or in defendant's arguments at the hearing thereon even remotely touched on grounds that would provide a basis for setting aside defendant's guilty pleas. Instead, both the motion and the argument focused entirely on equitable considerations that in defendant's view favored a lighter sentence than the one imposed. The absence of a relevant relation between the title of defendant's motion on the one hand, and its content and defendant's supporting argument on the other, was commented on by the trial justice in his bench decision denying the motion. He said that he "listened with care to everything that [counsel] has said hoping that he would say something that was relevant to a motion to vacate the plea of guilty," but that "[n]othing that [counsel] has said has anything whatsoever to do with a motion to vacate a plea of guilty." The case is now here on defendant's appeal from the order denying her motion.

On appeal defendant argues that the trial justice accepted her guilty pleas without fully complying with Super. R. Crim. P. 11.[1] This argument, however, was not advanced and, consequently, was not ruled on at the hearing on the motion to vacate. Accordingly, there is apparently nothing for us to review. *See State* v. *Correia*, 106 R.I. 655, 664, 262 A.2d 619, 624 (1970).

---

[1] Super. R. Crim. P. 11 provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea."

36

Moreover, even if defendant had alleged the trial justice's noncompliance with Rule 11 as the basis of her motion to set aside her pleas, Super. R. Crim. P. 32(d) would have precluded favorable action thereon. That rule provides in part that "[a] motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed * * *." In this case, the motion was untimely because imposition of the sentence preceded the filing of that motion.

The label defendant placed on her motion suggests that her purpose might have been to vacate the sentence because it was illegal. Such a motion would have been timely because Super. R. Crim. P. 35 permits the Superior Court to correct an illegal sentence "at any time." The motion pertains, however, only to a sentence that is imposed after a valid conviction but is not authorized under law. *See United States* v. *Morgan*, 346 U.S. 502, 506, 74 S. Ct. 247, 250, 98 L. Ed. 248, 253-54 (1954); 2 Wright, *Federal Practice and Procedure* §582 at 552 (1969). *See generally Frazier* v. Langlois, 103 R.I. 607, 240 A.2d 152 (1968). Relief for this defendant under Rule 35 is therefore unavailable because certainly convictions of robbery and conspiracy to rob permit the imposition of a 7-year sentence.

In light of the foregoing deficiencies in defendant's motion, there are ample reasons for rejecting her appeal. To proceed on that tack, however, would not mean that defendant would be denied her opportunity to challenge the errors that she alleges the trial justice made in accepting her guilty pleas. That opportunity would be available by application to the Superior Court under the Post Conviction Relief Act and if there denied, she would then have a right to seek appellate review in this court. *See* G.L. 1956 (1969 Reenactment) §10-9.1-1 to -9, as amended by P.L. 1974, ch. 220, §3.

This approach was the one we took in the recent case of *Johnson* v. *Mullen*, 120 R.I. 701, 390 A.2d 909 (1978). In that case we held that we would require that the post-conviction route be followed "absent the most pressing circumstances." *Id.* at 706, 390 A.2d at 911-12. In our

judgment, this case possesses such circumstances and therefore falls within that limited exception. The issue raised here is one of constitutional proportions, the necessary record is before us, defendant has been imprisoned since 1977, and if we do not act now, relief, if it is to come to her at all, will probably not arrive until after she has become eligible for parole. Moreover, it seems to us that to dismiss defendant's appeal at this point on procedural grounds and to require her to resort to postconviction procedures would elevate form above substance, result in a waste of valuable judicial time, and needlessly prolong this matter. Accordingly, we treat this appeal as if it were from the denial of an application for post-conviction relief. *See State* v. *Lanoue,* 117 R.I. 342, 345, 366 A.2d 1158, 1160 (1976). *See generally Walker* v. *Langlois,* 104 R.I. 274, 275, 243 A.2d 733, 734 (1968).

We turn, then, to the crux of defendant's complaint which is that her convictions must be vacated and her earlier not guilty pleas reinstated because the trial justice allegedly accepted her guilty pleas without having first complied with the mandate of Super. R. Crim. P. 11. That rule is substantially like its federal counterpart in that it requires that the court shall not accept a plea of guilty or nolo contendere "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." Our rule further provides that "[t]he court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea."

Even before that rule was adopted in this state, however, we said that in *Boykin* v. *Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), "the Supreme Court of the United States, at least by implication, makes the procedure set out in [Fed. R. Crim. P. 11] applicable to the states through the fourteenth amendment when federal constitutional rights are involved in the entry of the plea." *Bishop* v. *Langlois,* 106 R.I. 56, 65, 256 A.2d 20, 24 (1969). Elaborating on that pronouncement, and also on the Supreme Court's holding in *McCarthy* v. *United States,* 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969), we announced as our rule

"that in accepting the plea of guilty or nolo contendere after the date of this decision, the trial justice '* * * shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.' Such trial justice shall further cause the record to show affirmatively that such inquiry was made and that the accused did by his responses thereto demonstrate clearly that he was aware of the nature of the charge to which he pleaded and that he was aware that such a plea constitutes a waiver of his pertinent constitutional rights. Absent such an affirmative disclosure in the record of compliance with this mandate, the trial court, upon an appropriate petition, shall vacate the plea entered and order that the accused be permitted to plead over in proper course." 106 R.I. at 66-67, 256 A.2d at 25.

Any doubts that might have been entertained on whether *Bishop* required a dialogue between the sentencing justice and the accused were dispelled in *Flint* v. *Sharkey*, 107 R.I. 530, 268 A.2d 714 (1970), where we said that a post-*Bishop* or *Boykin* nolo or guilty plea

"will be vacated unless the record shows that the court has conducted an on-the-record examination of the defendant before accepting his plea to determine if the plea is being made voluntarily with an understanding of the nature of the charge and the consequence of the plea." *Id.* at 537, 268 A.2d at 719; *see, e.g., Johnson* v. *Mullen*, 120 R.I. at 701, 390 A.2d at 913 n.3; *Bishop* v. *Sharkey*, 108 R.I. 564, 568, 277 A.2d 747, 749 (1971).

In this case defendant does not now contend that she was not fully advised by the trial justice, or that she did not fully understand, that by pleading guilty she was waiving her rights to a trial by jury, the presumption of innocence, the privilege against self incrimination, and the rights to confront

and cross-examine her accusers, to testify and to call witnesses in her own defense, to be proven guilty beyond a reasonable doubt and to appeal a conviction to this court. She argues, however, that under the rule in *Bishop*, and also pursuant to Super. R. Crim. P. 11, the trial justice, in addition to ascertaining that she was aware of those rights, should also have addressed her personally to make certain that she understood the nature of the charges against her and the consequences of her pleas. She also asserts that the trial justice neglected to determine whether there was a factual basis for her pleas. She concludes that these alleged failures mandate that her judgments of conviction be vacated and that her not guilty pleas be reinstated.

The issues she raises were considered in their constitutional context by the Supreme Court in *Henderson* v. *Morgan,* 426 U.S. 637, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976). In that case, the Supreme Court held that a plea of guilty to a charge of second-degree murder by an accused who neither knew nor had been advised by counsel or court that an intent to kill was an essential element of the offense charged was involuntary in the constitutional sense and could not support a judgment of guilt. *Id.* at 647, 96 S. Ct. at 2258-59, 49 L. Ed. 2d at 115-16.

Expanding on that thesis, the Court also agreed with the thrust of the petitioner's argument that the voluntariness of a plea should not be determined by whether "a ritualistic litany of the formal legal elements of an offense was read to [a] defendant," but by examining "the totality of the circumstances" and determining "whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused." *Id.* at 644, 96 S. Ct. at 2257, 49 L. Ed. 2d at 114. Moreover, the Court refused to assume that "notice of the true nature, or substance, of a charge always requires a description of every element of the offense * * *." *Id.* at 647 n.18, 96 S. Ct. at 2258 n.18, 49 L. Ed. 2d at 115 n.18.

And, finally, in language relevant in part to the *Bishop* and *Flint* mandate that the explanation of the nature of the offense charged must come from the trial justice, the Court said:

"Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit. This case is unique because the trial judge found as a fact that the element of intent was not explained to respondent. Moreover, respondent's unusually low mental capacity provides a reasonable explanation for counsel's oversight; it also forecloses the conclusion that the error was harmless beyond a reasonable doubt, for it lends at least a modicum of credibility to defense counsel's appraisal of the homicide as a manslaughter rather than a murder." *Id.* at 647, 96 S. Ct. at 2258-59, 49 L. Ed. 2d at 115-16.

The *Henderson* case, however, was decided after our decisions in *Bishop* and *Flint* were announced and subsequent to the adoption of Super. R. Crim. P. 11 which codified those decisions.[2] Consequently, we must examine *Henderson* to ascertain if its constitutional requirement on this point is less exacting and demanding than that explicated in our cases. If it is, then, of course, the less-demanding *Henderson* requirement will govern. *See Oregon* v. *Hass*, 420 U.S. 714, 719, 95 S. Ct. 1215, 1219, 43 L. Ed. 2d 570, 575-76 (1975).

■ As we read *Henderson*, it requires only that at the conclusion of the plea hearing, the trial justice should be able to say with assurance that the accused is fully aware of the nature of the charge and the consequences of the plea. *See State* v. *Ohta*, 114 Ariz. 489, 562 P.2d 369 (1977); *In re Ronald E.*, 19 Cal. 3d 315, 562 P.2d 684, 137 Cal. Rptr. 781 (1977).

[2]The defendant in *Henderson* pleaded in 1965, initiated proceedings in the New York courts in 1970 to have his conviction vacated, and when relief was denied turned to the federal courts in 1973. The case was argued in and decided by the Supreme Court in 1976. 426 U.S. at 637-39, 96 S. Ct. at 2253-55, 49 L. Ed. 2d at 108, 111.

That objective may be attained by:

"(1) an explanation of the essential elements by the judge at the guilty plea hearing;

(2) a representation that counsel had explained to the defendant the elements he admits by his plea [footnote omitted];

(3) defendant's statements admitting to facts constituting the unexplained element or stipulations to such facts." *Commonwealth* v. *McGuirk*, 376 Mass. 338, 343, 380 N.E.2d 662, 666 (1978).[3]

In addition to the constitutional requirement there is also Super. R. Crim. P. 11's specific provision that the court address the defendant personally. That mandate, if applicable, can be satisfied if the record of the "[Fed. R. Crim. P. 11] proceeding on its face discloses, despite the trial court's failure sufficiently to make the required explication of the charges, that [the defendant] understood them." *United States* v. *Coronado*, 554 F.2d 166, 173 (5th Cir.), *cert. denied*, 434 U.S. 870, 98 S. Ct. 214, 54 L. Ed. 2d 149 (1977).

When we apply these principles to this case, we find that the record, although it does not affirmatively show that the trial justice engaged in an extensive interchange with the accused about whether she fully understood the nature of the charges, does disclose that defendant accompanied her request that she be allowed to plead guilty with an affidavit. In that affidavit she said, "I also understand that for purposes of this case I am admitting sufficient facts to substantiate the charge(s) which has (have) been brought against me in the indictment(s) to which these pleas relate."

Accompanying that affidavit is a certification of defense counsel which reads:

---

[3]*See* Note, *Due Process—Guilty Pleas—Constitutional Standards of Voluntariness Were Not Satisfied by a Plea of Guilty Where Defendant Was Unaware that Intent to Kill Was an Essential Element of the Crime,* 5 Am.J. Crim. L. 105, 112-113, 117 (1977).

"I hereby certify that I have explained the above to Rebecca Williams and that the defendant has read and indicated to me that he/she fully understands all his/her rights and the defendant voluntarily and intelligently enters a plea of *GUILTY-NOLO CONTENDERE* to the charge(s) in Indictment numbered P2 77-1101."

Although it might be argued that what appears in the affidavit and certificate is the kind of boilerplate litany that *Henderson* does not tolerate, the state does not rely solely on that affidavit and certification to establish defendant's comprehension of what she was doing. It relies also on the assurances received by the trial justice from counsel that defendant had "read the affidavit carefully with me, very carefully, and very closely, and we have rehashed this and rehashed it again, and rehashed it back and forth, and she has finally agreed, voluntarily, that this is what she wants to do, Your Honor." In addition the trial justice inquired of defendant whether she had gone over the affidavit with her attorney "word-for-word." She responded under oath that she had, that she was able to understand everything she read, that she was satisfied that she had been properly represented by her attorney and that she had had a satisfactory and adequate opportunity to discuss all of the facts of the case with him and had made a complete disclosure to him of all the facts so that he could properly advise her.

Finally, at the trial justice's direction, the prosecutor recited what facts the state was prepared to prove if the case went to trial. The trial justice then inquired of defendant whether she understood what the prosecutor had said. She noted some discrepancies, but in large measure concurred with the prosecutor's statement. Furthermore, proof of the facts she agreed to, even when viewed in the light most favorable to her, would clearly support convictions of the crimes of conspiracy to rob and robbery. Thus, viewing the record as a whole and the circumstances in their totality, we are satisfied that defendant understood the nature of the offenses charged and their essential elements. No more was required either to satisfy the constitutional test or to comply with Rule 11's mandate.

The defendant assigns as additional error her claim that she was not specifically advised of the consequences of a conviction on the conspiracy to rob count and that her conviction on that count should therefore be vacated. Although it is true, as defendant argues, that the trial justice did not specifically advise what the minimum and maximum sentences for conviction of conspiracy were, he did inform her that the minimum sentence for robbery was 5 years, that she could also be sentenced to life imprisonment for that offense and that he would be surprised if he imposed anything less than a jail sentence. In addition, the prosecutor indicated that the state intended to recommend a substantial jail sentence. Furthermore, defendant's affidavit acknowledges that the maximum sentence for conspiracy is 10 years. In the circumstances, we are satisfied that the trial justice's specifically informing defendant of what was the permitted punishment for a conviction of conspiracy to rob would not in any way have contributed to her improved understanding of the consequence of her pleas.

We reached a similar conclusion in *Johnson* v. *Mullen*, 120 R.I. 701, 390 A.2d 909 (1978). In that case the defendant was charged both with possession of burglar tools and robbery, and he sought to have his guilty pleas vacated because the sentencing justice advised him only of the penalty for robbery. In rejecting his challenge to the trial justice's refusal to grant that relief, we said:

> "We do not believe that the sentencing justice's further admonition that the charge of possession of burglar tools carried a 10-year maximum sentence would have contributed to Johnson's better understanding of the penal consequences of his plea or in any way affected the knowing entry of the plea. Johnson was told that in pleading nolo contendere to all of the charges the court could sentence him to life imprisonment. Nevertheless, he stood before the court with his attorney, stated that he understood the penalty, and still wished to plead nolo. The possibility that knowledge of the punishment for the burglar-tools offense prevented him

from understandingly evaluating the choice to plead or proceed to trial strikes us as being highly improbable. In fact, nowhere in his petition for postconviction relief or in his supporting affidavit does Johnson suggest that had he known of the penalty for this particular offense, he would not have entered his plea. We, therefore, find that the sentencing justice fulfilled his duty to make Johnson aware of the penal consequences of his plea." *Id.* at 709, 390 A.2d at 913.

We conclude that *Johnson* controls, and that accordingly the trial justice's failure to inform defendant of the penalty for conspiracy to rob does not require that her guilty plea be vacated.

Finally, defendant points to that portion of Super. R. Crim. P. 11 that prohibits the court from entering a judgment on a plea of guilty "unless it is satisfied that there is a factual basis for the plea." The defendant contends that the record here fails to disclose that the trial justice could have been satisfied that the requisite basis existed. A precise and succinct response to a like challenge in a similar case is found in *United States* v. *Bethany*, 489 F.2d 91, 92 (5th Cir. 1974), where the court, quoting *Jimenez* v. *United States*, 487 F.2d 212, 213 (5th Cir. 1973), said:

> "Contrary to appellant's argument, this requirement does not demand a 'written, sworn, and filed stipulation of evidence,' but only that the court make an inquiry 'factually precise enough and sufficiently specific to develop that [defendant's] conduct on the occasions involved was within the ambit of that defined as criminal.' "

In this case, the trial justice sufficiently demonstrated his satisfaction with the factual basis for defendant's pleas when he heard (1) the prosecution's summation of what the state intended to prove, and (2) defendant's response to his inquiries concerning her reaction to the prosecutor's statement. What he learned justified his concluding that defendant had agreed to enough of the facts in the prosecution's

summation that submission thereof at trial as evidence would have required that both charges against defendant be submitted to the jury.

The defendant's appeal is denied and dismissed, the judgments of conviction are affirmed, and the case is remanded to the Superior Court.

*Lawrence Iacoi*, Assistant Attorney General, for plaintiff.

*William G. Grande*, for defendant.