STATE

v.

**Ronnie FRAZAR.**

**No. 2002–192–C.A.**

Supreme Court of Rhode Island.

June 11, 2003.

Aaron L. Weisman, Providence, for Plaintiff.

Michael J. Gardiner, Warwick, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, JJ., WEISBERGER, C.J. (Ret.), and SHEA, J. (Ret.).

## OPINION

PER CURIAM.

This appeal from the denial of an application for post-conviction relief came before the Court for oral argument on March 11, 2003, pursuant to an order directing the parties to appear and show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the case should be decided at this time.

The applicant, Ronnie Frazar (Frazar or applicant), appeals from the denial of his application for post-conviction relief following the entry of his plea agreement.[1] He asserts that the plea was not entered into voluntarily and that the trial justice violated Rule 11 of the Superior Court Rules of Criminal Procedure by failing to conduct sufficient inquiry to determine whether he understood the implications of his plea. He additionally contends that the trial justice erred in later finding that his plea had been entered both intelligently and voluntarily and that he was fully aware of the consequences of his plea.

On June 11, 1999, Frazar allegedly assaulted his sister-in-law when he pointed a gun to her head. On October 26, 1999, Frazar's two attorneys presented his signed plea agreement to a Superior Court trial justice.[2] Frazar, through a Spanish interpreter, admitted in open court that he had signed the plea agreement. The interpreter told the trial justice that she had translated the agreement to Frazar and that he appeared to understand its contents. The following colloquy then took place through the interpreter:

"THE COURT: Mr. Frazar, on or about June 11th of this year did you possess a firearm—handgun?

"THE DEFENDANT: Yes.

"THE COURT: Did you have a license for possessing that handgun?

"THE DEFENDANT: What do I have to answer?

"THE COURT: I didn't hear you.

"THE DEFENDANT: Why do I have to answer?

"THE COURT: Because I asked you.

"THE DEFENDANT: No.

"THE COURT: Did you also assault Lisa Pagan with that handgun?

"THE DEFENDANT: I didn't hurt her. I didn't hurt her.

"THE COURT: I understand that, but did you point it at her?

"THE DEFENDANT: Yes.

"THE COURT: You have a right to trial on those charges. You would be presumed innocent at the trial. You would not have to testify or present evidence. The State would have been required to prove your guilt beyond a reasonable doubt. You would not have had to testify or present evidence. You would have had a right to confront and cross-examine the State's witnesses. If convicted, you could have appealed your conviction to the Supreme Court. If I accept your change of plea those rights and appellate rights disappear; they're waived. You can't withdraw your plea once I have accepted it without permis-

---

1. The applicant, a citizen of the Dominican Republic, entered a plea of guilty to charges of assault with a dangerous weapon and carrying a pistol without a license. In return, the state dismissed a charge of assault with a device simulating a firearm. He was sen-tenced to serve a five-year suspended term of imprisonment, with probation.

2. Frazar signed two plea agreement forms, one was in English and the other was in Spanish.

sion of the Court. Do you understand all of that?

"THE DEFENDANT: Yes.

"THE COURT: Has anybody forced or coerced you to plead guilty to these two charges?

"THE DEFENDANT: No.

"THE COURT: The plea will be accepted * * *.

" * * *

"THE COURT: Mr. Frazar, are you a United States citizen, or a resident alien?

"THE DEFENDANT: No.

"THE COURT: I tell you Mr. Frazar, I have no idea what immigration authorities may have to say about your situation in the United States. I have no jurisdiction in that regard. You understand that?

"THE DEFENDANT: Yes."

A few weeks later, Frazar was arrested and deported by immigration authorities. When he later attempted to reenter the United States, he was arrested, charged, and convicted in a federal court for illegal reentry.[3] On October 4, 2000, Frazar filed a motion for a writ of coram nobis[4] and an application for post-conviction relief.

In his memoranda to the Superior Court, Frazar maintained that he did not intelligently and voluntary enter his plea agreement and he suggested that this was attributable to ineffective assistance of counsel. On December 6, 2000, the trial justice summarily dismissed the applica-

tion without a hearing. Frazar appealed to this Court and we remanded the case for a hearing on his post-conviction relief application. See State v. Frazar, 776 A.2d 1062 (R.I.2001) (Mem.).

On January 29 and 30, 2002, the trial justice conducted the hearing. Frazar and his wife, Maria Frazar, testified on Frazar's behalf,[5] while the two attorneys who formerly represented Frazar testified on behalf of the state. At the conclusion of the two-day hearing, the trial justice rendered his decision. He completely rejected the Frazars' testimony as incredible. Instead, he accepted as credible the testimony from the attorneys. He determined that Frazar knew and understood the consequences of the plea agreement, that the plea had not been coerced and "that the defendant's attorneys' efforts served the defendant well and that they represented him effectively." The trial justice then denied Frazar's application for post-conviction relief and remanded him to federal custody.

■ On appeal Frazar asserts that he received ineffective assistance of counsel and did not make a knowing and intelligent waiver of his constitutional rights in pleading guilty to the assault and weapon possession charges. He contends that the trial justice erred in failing to ask him personally whether he understood the implications of his plea and in failing to determine whether his plea was voluntary. He additionally contends that the trial justice erred when he elicited incriminating

---

3. The applicant faces enhanced sentencing penalties because of his conviction for assault with a dangerous weapon. He awaits sentencing pending the outcome of this appeal.

4. This motion was inappropriate because, pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure, "[w]rits of coram nobis * * * are abolished, and the procedure for obtaining any relief from a judgment shall

be by motion as prescribed in these rules or by an independent action."

5. Apparently, Frazar has managed to gain quite a command of the English language since the entry of the plea agreement; consequently, he did not require the services of any interpreters at the post-conviction relief hearing.

statements from him before establishing whether the plea was intelligent and voluntary. Finally, Frazar maintains that the trial justice erred in later finding his plea agreement to be both intelligently and voluntarily given and that he was fully aware of the consequences of his plea.

■ This Court has noted previously that in *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969), "the United States Supreme Court held that it was impermissible to presume a waiver of constitutional rights by a criminal defendant if the record was silent in regard to the voluntariness of the plea." *Ouimette v. State*, 785 A.2d 1132, 1136 (R.I.2001). That is because "[r]ecord proof of an intelligent and understanding waiver of a defendant's rights was required in order to protect the constitutional guarantees against compulsory self-incrimination, the right to a jury trial and the right to confront one's accusers." *Id.* Pleas entered after the holding in *Boykin* "will be vacated unless the record shows that the court has conducted an on-the-record examination of the defendant before accepting [the] plea [in order] to determine if the plea is being made voluntarily with an understanding of the nature of the charge and the consequences of the plea." *Id.* (quoting *Flint v. Sharkey*, 107 R.I. 530, 537, 268 A.2d 714, 719 (1970)). Thus, a trial court "should engage in as extensive an interchange as necessary so that 'the record as a whole and the circumstances in their totality' will disclose to a court reviewing a guilty or nolo plea that the defendant understood the nature of the charge and the consequences of the plea." *State v. Feng*, 421 A.2d 1258, 1267 (R.I. 1980) (quoting *State v. Williams*, 122 R.I. 32, 42, 404 A.2d 814, 820 (1979)).

In 1972, our Rule 11 was adopted to formalize the requirements of due process under the Fourteenth Amendment as reflected by the holding in *Boykin*. Rule 11 provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. * * * The court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea."

■ "Where a plea has been accepted without conforming to the requirements of the rule, the defendant's plea must be set aside and he is entitled to plead anew." Reporter's Notes to Rule 11 (citing *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). "The record must affirmatively disclose the voluntary and intelligent character of the plea because a valid waiver of constitutional rights cannot be presumed from a silent record."[6] *Feng*, 421 A.2d at 1267.

"In reviewing whether a trial justice could have been satisfied for purposes of Rule 11, we shall examine the record [at the time the plea was entered] for all indices that a guilty or nolo plea was based on fact. We shall not vacate a plea unless the record viewed in its totality discloses no facts that could have satisfied the trial justice that a factual

---

6. Although plea agreements normally are fully negotiated off the record, a byproduct of the development of a record conforming to the requirements of Rule 11 of the Rhode Island Superior Court Rules of Criminal Procedure is the deflection of subsequent claims of denial of due process and ineffective assistance of counsel.

basis existed for a defendant's plea." *Feng*, at 1269.

■ Mindful as we are that "[o]n review of an application for post-conviction relief we are bound by the trial justice's determination concerning credibility[,]" *id.* at 1273, nevertheless, we conclude that the credibility findings in this case are irrelevant. That is because the purpose of the hearing was not to expand the record; rather, its purpose was to review the totality of the record as it existed at the time the plea was entered to determine whether there was sufficient evidence to establish whether Frazar made his plea knowingly and voluntarily. We conclude that the evidence, though sparse, was sufficient to establish that Frazar knowingly and voluntarily gave up his rights.

The plea agreement colloquy in this case, although somewhat unorthodox, demonstrates that Frazar understood his rights and voluntarily gave them up. Although the trial justice probably should not have elicited inculpatory statements from Frazar before determining his understanding and willingness to plea and before explaining the consequences of the plea, a review of the totality of the record reveals that Frazar later clearly stated that he understood all his rights and that his plea was not the product of any force or coercion, that is, it was voluntary.

We have stated previously that although Rule 11 was adopted "to safeguard the rights of criminal defendants who plead guilty or nolo contendere; it did not intend that the rule serve as a trap for those justices who fail to enumerate each fact relied on to accept such a plea." *Feng*, 421 A.2d at 1269. In this case, the trial justice did not accept the actual plea until he was satisfied that Frazar understood the rights that he was giving up and that his plea was voluntary. Considering that Frazar's inculpatory statements could not have been used against him had the trial justice rejected the plea, the error, if any, was harmless. However, suffice it to say that it would be better practice for trial justices to conduct plea agreement hearings in the order set out by Rule 11; namely, to first determine whether the plea is "made voluntarily with understanding of the nature of the charge and the consequences of the plea" and then, next to ascertain to their satisfaction "that there is a factual basis for the plea."

Because we are satisfied that Frazar knowingly and voluntarily entered his plea, we need not address his ineffective assistance of counsel claim.

Accordingly, and for the foregoing reasons, we deny and dismiss Frazar's appeal and affirm the judgment denying the application for post-conviction relief. The papers in this case are remanded to the Superior Court.