DECISION
William O. Araujo ("Araujo" or "petitioner") is before this Court on his application for post-conviction relief pursuant to G.L. 1956 § 10-9.1-1. Araujo claims that the plea of nolo contendere ("plea") he entered on April 25, 1994 did not comply with Rule 11 of the Superior Court Rules of Criminal Procedure.
 I Facts and Travel
On April 25, 1994, Araujo, with the assistance of counsel, entered a plea of nolo contendere to one count of burglary in violation of G.L. 1956 § 11-8-1 and one count of conspiracy. The trial justice, who heard and accepted Araujo's plea, sentenced him to ten years suspended sentence with ten years probation. (Plea Hr'g Tr. 3-5, April 25, 1994.) Araujo states he completed his sentence without incident, an assertion the State does not challenge. (Mem. Of Law in Supp. of Defendant's Application for Post-Conviction Relief 1, Jan. 2, 2009.)
On January 2, 2009, Araujo, represented by new counsel, submitted an application asking this Court to grant his post-conviction relief.[1] Araujo contends the trial court accepted his plea without ensuring he entered it in accordance with Rule 11 and the commands of the United *Page 2 
States Constitution. (Id. at 4.) Specifically, Araujo requests this Court to vacate his plea because he made it without being informed "of the nature of the charge." Super. R. Crim. P. 11.
At the plea hearing for the burglary and conspiracy charge, on April 25, 1994, Araujo's attorney at the time, Vincent Indeglia ("Mr. Indeglia"), appeared before the Court and notified it that Araujo moved to withdraw his plea of guilty and plead nolo contendere. (Plea Hr'g Tr. 1.) Michael Stone ("Mr. Stone"), Special Assistant Attorney General, represented the State at the plea hearing. (Id.)
Given the fact-driven analysis mandated by the Rhode Island Supreme Court, this Court will present the relevant portions of the plea colloquy to determine if Araujo entered the plea in compliance with Rule 11.
 THE COURT: In this matter Count 1 the defendant is charged with burglary. Count 2 conspiracy. Is there a request for a change of plea?
 MR. INDEGLIA: Yes, Your Honor, the defendant at this time moves the Court to withdraw his plea of not guilty and enter a plea of nolo contendere to the indictment. It's actually, Your Honor, my understanding that there will be two counts. Counts 3 and 4 that are dismissed.
 MR. STONE: That's correct.
 THE COURT: So we are talking about Counts 1 and 2 here for a change of plea. Mr. Araujo, have you discussed all of this with your attorney?
 THE DEFENDANT: Yes, I have.
 THE COURT: Do you understand what is happening in the courtroom right now?
 THE DEFENDANT: Yes, I do.
 THE COURT: If you have any questions at all, let me know as we go through this, and I will answer your questions. I have been given this form by your attorney. Did you sign this form?
 THE DEFENDANT: Yes, I did.
 THE COURT: There are certain rights that are contained in this form. Beginning with the first one, if you have any questions, let me know. You have a right to a trial by a jury . . . to appeal . . . to have the State prove the elements of the charges . . . to the presumption of innocence . . . to confront witnesses . . . testify in *Page 3 
your own defense. . . . Do you have any questions concerning those rights?
 THE DEFENDANT: No.
 THE COURT: If I accept your plea of nolo contendere, you will give up those rights. Do you understand that?
 THE DEFENDANT: Yes.
 THE COURT: Would the State give me the facts in support of Counts 1 and Count 2.
 MR. STONE: Your Honor, if this matter proceeded to trial in the remaining counts, the State would have been prepared to prove in Count 1 that William Araujo on August 29, 1992, in Providence, did commit a burglary of a dwelling house of Frances Vashavey (sic). And Count 2 that Wililam Araujo on August 29, 1992, in Providence did conspire with Derrick Saunders and Justin Fairchild to do an unlawful act, which is to commit the crime of burglary.
 . . . .
 THE COURT: Do you accept his statement as being true?
 THE DEFENDANT: Yes.
 THE COURT: If I accept your plea and impose that sentence, you can't later change your mind and withdraw the plea unless the Court gives you permission. Do you understand that?
 THE DEFENDANT: Yes.
 THE COURT: You heard the recommended sentence (explains sentence). . . . Do you understand all of that?
 THE DEFENDANT: Yes, I do.
 THE COURT: Any questions at all?
 THE DEFENDANT: No.
 THE COURT: In this matter I find this defendant does have the capacity to understand the nature and the consequences of his plea including but not limited to the waiver of those rights which I have reviewed with him. I also find that there is a factual basis for your plea. Accordingly, I do accept it. Is there anything you wish to say at all before this Court imposes sentence?
 THE DEFENDANT: No. (Plea Hr'g Tr. at 1-5.)
After petitioner submitted his application for post-conviction relief, this Court held an evidentiary hearing, over petitioner's objection, to help determine if Araujo was aware of the nature of the crimes to which he pled nolo contendere. Both Araujo and his attorney from the burglary plea hearing, Mr. Indeglia, spoke at the hearing. Araujo stated that he was nearly twenty-six years old at the time of the plea and that he had been in the United States for ten *Page 4 
years. (Mem. of Def. State of Rhode Island 6.) He acknowledged that he clearly understood the English language at the time of the plea and that he graduated high school in 1985. (Id.) Specifically relating to the basis of this post-conviction application, petitioner testified that he was unaware that the crime of burglary included the intent to commit a felony while in the dwelling. (Id.) Mr. Indeglia indicated that while he generally explains the charges to his clients, he had no recollection if he had done so with Araujo. (Id.)
The State moves to dismiss Petitioner's application for post-conviction relief for two reasons. Preliminarily, it claims the affirmative defense of laches bars the petitioner's claim because fifteen years have passed since the plea. (Id. at 7.) Notwithstanding, it contends that Araujo was aware of the nature of the charges to which he pled nolo contendere. (Id.) To support this contention, the State reminds the Court of the Plea Form Affidavit, which Araujo signed. (Id. at 4.) It contends that this form is highly probative when considered along with the plea colloquy previously cited.
 II Defense of Laches
The Rhode Island Supreme Court recently determined — citing to other appellate courts that have held accordingly — that the doctrine of laches can apply to an application for post-conviction relief. Raso v. Wall, 884 A.2d 391, 394 (R.I. 2005) (construing § 10-9.1-3 language that application may be filed at any time to mean any reasonable time). See also Baxter v. State,636 N.E.2d 151, 152-53 (Ind. Ct. App. 1994) (determining defendant should have brought post-conviction application within reasonable time of — rather than seven years after — learning of its availability twenty-seven years after his conviction). This Court will grant the laches defense if the State proves beyond a preponderance of the evidence that "the applicant unreasonably delayed in seeking relief and that the state is prejudiced by the delay." Id. at 396. The two *Page 5 
requirements of laches are therefore "negligence to assert a known right, seasonably coupled with prejudice to an adverse party."Rodriques v. Santos, 466 A.2d 306, 311 (R.I. 1983).
Here, the State asserts Araujo unreasonably delayed in bringing this application for post-conviction relief because fifteen years have passed since his plea. Petitioner defends against the claim of laches by explaining that he was unaware of the nature of his allegedly unintelligent plea until just recently seeking counsel in an immigration matter. He claims that prior to this time, he never knew the elements of burglary, and therefore, the delay results from ignorance of a known right and not negligence.
In the instant case, the State does not offer any evidence that suggests Araujo knew of his right to bring this petition. Notwithstanding this lack of evidence, other jurisdictions that recognize the laches defense acknowledge that a court may infer knowledge by the defendant if the State offers evidence of "[r]epeated contacts with the criminal justice system, consultation with attorneys and incarceration in a penal institution with legal facilities." Kirby v. State, 822 N.E.2d 1097, 1100
(Ind. Ct. App. 2005). None of those factors — nor any other — is currently present to suggest that Araujo knew of his ability to bring a claim for post-conviction relief based on his allegedly unknowledgeable plea. Rather, the evidence shows that Araujo immediately brought this action after consulting with an attorney in an immigration matter who informed him of the Rule 11 requirements. Consequently, as the State is unable to prove by a preponderance of the evidence that Araujo negligently delayed bringing his post-conviction application, the defense of laches does not bar the petitioner's action.[2] *Page 6 
 III Claim of Rule 11 Violation A Constitutional Rights Implicated by Court Rule
A defendant waives several fundamental constitutional rights when entering a plea of nolo contendere. Moniz v. State,933 A.2d 691, 695 (R.I. 2007). A trial justice, presented with such a plea, must ensure that the defendant has entered the plea both voluntarily and intelligently to satisfy constitutional mandates.
Interpreting the voluntary and intelligently standard, the United States Supreme Court has advised that a "ritualistic litany of the formal legal elements" of an offense is not required. Hendersonv. Morgan, 426 U.S. 637, 644-45 (1976) (agreeing with argument that totality of circumstances should be examined to determine if substance of charge conveyed to accused). The Henderson Court went on to explain that even when the record is absent any representation the nature of the offense has been explained to the accused, "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." Id. at 647. At the same time, however, the Court reaffirmed that a defendant must receive "real notice of the true nature of the charge . . . the first and most universally recognized requirement of due process." Id. at 645 (quotingSmith v. O'Grady, 312 U.S. 329, 334 (1941)).
Not long after the Henderson decision, the Rhode Island Supreme Court had two opportunities to interpret the interplay between Rule 11 and its constitutional requirements. Rule 11 provides, in relevant part, that the justice receiving the plea "shall not accept . . . a plea of nolo contendere without first addressing the defendant personally and determining that the plea *Page 7 
is made voluntarily with understanding of the nature of the charge and the consequences of the plea. . . ." Super R. Crim P. 11.
In State v. Williams, the Rhode Island Supreme Court said the following in its interpretation of Henderson:
 As we read Henderson, it requires only that at the conclusion of the plea hearing, the trial justice should be able to say with assurance that the accused is fully aware of the nature of the charge and the consequences of the plea.
 That objective may be attained by:
 "(1) an explanation of the essential elements by the judge at the guilty plea hearing;
 (2) a representation that counsel had explained to the defendant the elements he admits by his plea
 (3) defendant's statements admitting to facts constituting the unexplained element or stipulations to such facts." State v. Williams, 122 R.I. 32, 41, 404 A.2d 814, 819
(1979) (internal citations omitted).
Applying this standard, our Supreme Court — although acknowledging the boilerplate nature of the affidavit used in the case — credited the trial justice with considering the affidavit, along with other pertinent evidence, and denied the defendant's post-conviction application. Specifically, the Williams Court credited the trial justice with considering the assurances of the defendant's attorney that he had read the affidavit very carefully with the client. Lastly, the Supreme Court cited to the prosecutor's recitation of the facts, to which the defendant agreed.
After deciding Williams, the Rhode Island Supreme Court confronted another similar post-conviction application the following year. In State v. Feng, the defendant again presented the Supreme Court with the challenge of determining how much information a trial justice must solicit from the defendant to demonstrate upon review that the defendant understood the nature *Page 8 
of the charges. State v. Feng, 421 A.2d 1258, 1267 (R.I. 1980). And again, as in Williams, the Court — although acknowledging deficiencies in the trial justice's heavy reliance on an affidavit — ultimately concluded that the record on a whole demonstrated the defendant understood the nature of the charges to which he pled nolo contendere.
In Feng, although the trial justice "did not undertake a lengthy examination of petitioner concerning the nature of the charges," he did elicit from the defendant that he understood the rights he was giving up as illustrated to him in the affidavit.Id. The Feng Court — while acknowledging the affidavit contemplates the attorney will discuss the enumerated rights therein with the defendant — stated "[r]eliance on an out-of-court explanation without assurance in the record that an explanation in fact occurred results in noncompliance with Rule 11." Id.
at 1268. Thus, even though the defendant answered affirmatively when asked by the trial justice if he agreed "that the State has a capability of submitting sufficient facts to a jury to convict you on every one of the counts," the Court still required additional assurance that an out-of-court explanation of the charges did, in fact, occur. Id. at 1267-68.
Accordingly, the Feng Court turned to the defendant's education to assuage its concerns of an out-of-court explanation. It called his education "an important factor," noting that "a literate defendant with a college education" should have no problem understanding the affidavit's statement that the defendant's lawyer has explained to him the nature of the charge. Id. at 1268. Consequently, our Supreme Court held that the trial justice's inquiries — as to whether the defendant signed the affidavit and whether he read the affidavit before he signed it — verified that the defendant's attorney did, in fact, explain to him the nature of the charges.
Subsequent to the Williams and Feng decisions, the Rhode Island Supreme Court has more recently had two further opportunities to analyze applications for post-conviction relief in *Page 9 
factually similar situations to the present. In State v.Frazar, the defendant — through a Spanish interpreter and with two attorneys representing him — admitted to signing a plea agreement his interpreter verified she had translated to him.822 A.2d 931, 933 (R.I. 2003) (per curiam). The trial justice then proceeded to personally question the defendant, notably asking questions about the facts underlying the charges brought against him. Specifically, the trial justice asked whether the defendant "possess[ed] a firearm-handgun"; whether he had "a license for possessing that handgun"; whether he "assaulted [the victim] with that handgun"; and whether he "point[ed] it at" the victim.Id. Based on this information, the Supreme Court, while conceding that the evidence was "sparse," reiterated that although Rule 11 was adopted "to safeguard the rights of criminal defendants who plead guilty or nolo contendere; it did not intend that the rule serve as a trap for those justices who fail to enumerate each fact relied on to accept such a plea." Id. at 936 (quotingFeng, 421 A.2d at 1269). Thus, the Court upheld the judgment denying the application for post-conviction relief.
In a similar case to Frazar, the Supreme Court, inMoniz v. State, again denied a petitioner's post-conviction application concluding the trial justice fully satisfied Rule 11's requirement that the defendant understand the nature of the charge.933 A.2d 691, 696 (R.I. 2007). The Supreme Court undermined the defendant's contention that he did not understand the nature of his plea by pointing to several factors. First, the Moniz Court noted the defendant had completed high school and had no difficulty "reading, writing, or understanding English." Id. at 695. Second, the defendant affirmatively admitted to understanding the terms of his plea agreement. Id. Finally, and most significantly, the defendant admitted to the factual basis for the charge, which the prosecutor presented by stating that if the case proceeded to trial "the State would prove that on November 30, 1996 in Bristol that [defendant] did unlawfully possess with *Page 10 
an intent to deliver a controlled substance; that substance being marijuana." Id. Accordingly, the Supreme Court concluded the trial court properly entered the nolo contendere plea.
 B Analysis
Upon an application for post-conviction relief based on a claim that Rule 11 was not satisfied, a petitioner "bear[s] the burden of proving by a preponderance of the evidence that [he] did not intelligently and understandingly waive [his] rights." State v.Gigueroa, 639 A.2d 495, 498 (R.I. 1994). The trial justice in the instant case determined that Araujo understood the nature of his plea. The State argues that he came to this determination based on several factors.
Initially, at the outset of the plea colloquy, the trial justice — inquiring to see if the defendant understood that he was changing his plea from not guilty to nolo contendere — asked, "Mr. Araujo, have you discussed all of this with your attorney?" to which Araujo responded "Yes, I have." He further asked if Araujo understood what was happening in the courtroom, to which Araujo again answered affirmatively.
Next, the trial justice referenced the standard plea form used in the Superior Court to enter a plea of nolo contendere or guilty and asked whether Araujo signed the form, to which Araujo stated he had. In this form was language stating that the defendant admitted to sufficient facts to substantiate the charges and that the defendant discussed the form with his attorney.
Lastly, the trial justice had the State recite the facts it relied on to support the burglary. The prosecutor stated, "the State would have been prepared to prove in Count 1 that William Araujo on August 29, 1992, in Providence, did commit a burglary of a dwelling house of Frances Vashavey (sic). And Count 2 that William Araujo on August 29, 1992, in Providence did conspire with Derrick Saunders and Justin Fairchild to do an unlawful act, which is to commit the crime of burglary." Araujo accepted these facts as being true. *Page 11 
The Rhode Island Supreme Court requires that the "trial justice should be able to say with assurance that the accused is fully aware of the nature of the charge before accepting a plea."Williams, 122 R.I. at 41, 404 A.2d at 819. The first way a trial justice can receive assurance is by explaining the essential elements of the charges to the defendant at the plea hearing.Id. Araujo was indicted on the crime of burglary in violation of G.L. 1956 § 11-8-1, which incorporates the common law definition of the crime. State v. O'Rourke, 121 R.I. 434, 436,399 A.2d 1237, 1238 (1979). "Burglary at common law is the breaking and entering the dwelling-house of another in the nighttime with the intent to commit a felony therein, whether the felony be actually committed or not." State v. Hudson, 53 R.I. 229, 230,165 A. 649, 650 (1933). The plea colloquy reveals that the trial justice did not explain the essential elements of burglary to the defendant. Indeed, the plea colloquy reveals the trial justice did not mention any element of burglary, and accordingly, the trial justice cannot claim to be assured Araujo understood the nature of the charge based on this possibility.
A second way a trial justice can be assured the defendant understands the nature of the charge is by "a representation that counsel had explained to the defendant the elements he admits by his plea." Williams, 122 R.I. at 41, 404 at 819. In the present case, the trial justice's question of, "have you discussed all of this with your attorney?" falls short of meeting Rule 11's requirements. It is not sufficient because the trial justice is not referencing the crime of burglary or even the elements of burglary. Rather, the trial justice is referring to the plea "bargain" — Araujo waiving his right to proceed to trial and pleading nolo contendere in exchange for the State's dropping Count 3 and Count 4. Although the trial justice could say with assurance that Araujo understood he was pleading nolo contendere to Counts 1 and Counts 2, that does not give *Page 12 
him assurance that Araujo knew the elements of Counts 1 and Counts 2, or that those elements were discussed with Araujo's attorney.
Similarly, without more, Araujo's confirming that he signed the plea form falls short of giving the trial justice assurance that Araujo went over the elements of burglary with his attorney. Unlike in Williams, where the Supreme Court verified that defendant's counsel read the affidavit with the defendant "word-for-word," the plea colloquy here does not reveal anywhere that Araujo's attorney went over the plea form with him. And unlike in Feng, where the Supreme Court relied on the defendant's college education, Araujo did not attain such a level of education.
The third and final way our Supreme Court recognized a trial justice may get assurance that the pleading defendant understands the nature of the charge is through "defendant's statements admitting to facts constituting the unexplained element or stipulations to such facts." Williams, 122 R.I. at 41, 404
at 819. The record reveals one instance during the plea colloquy where specific facts were mentioned. The prosecutor asserted the State was prepared to prove that Araujo committed a burglary of the dwelling house of Frances Vashevey (sic). This statement, however, does not touch the elements of the crime of burglary. Further, other than the mention of a dwelling house of another, it does not reference facts that would constitute the crime of burglary. The defendant cannot be expected to understand the elements and nature of burglary when the prosecutor uses the word itself and nothing more to present its case.
In comparing this case with Frazar and Moniz, it is evident that the factual stipulation is insufficient to meet the Rule 11 requirement of understanding the nature of the charge. InFrazar, the defendant pled guilty to assault with a dangerous weapon and carrying a pistol without a license. During the plea, the trial justice expressly asked the defendant both whether *Page 13 
he had a license for the gun and whether he pointed the gun at the victim. This is notably different than the prosecutor's statement in the present case that Araujo did commit a burglary of victim's home because Frazar included the facts which constitute the crime of assault. The absence of underlying facts in the present burglary charge makes it impossible for the trial justice to say with assurance that Araujo understood the nature of the charge of burglary and what facts the State was relying on to prove the necessary elements of the crime.
Likewise, the prosecutor's statement in Moniz alerted the defendant to the underlying facts to which he was pleading nolo contendere. In accepting a plea for the crimes of possession of marijuana with the intent to sell, the prosecutor directly stated the State was prepared to prove that defendant unlawfully possessed with an intent to deliver the controlled substance of marijuana. Here, the plea colloquy never mentions any intent, nor any underlying facts from which the intent to commit a crime can be inferred.
This Court is mindful that Rule 11 is not intended as a trap for justices who fail to enumerate each fact relied upon in the charge. However, this Court cannot ignore the importance of a plea of nolo contendere and the fundamental constitutional rights a defendant waives when entering such a plea. United States v.Mezzanatto, 513 U.S. 196, 209-10 (1995). The record in this case lacks any indication that the plea met the constitutional standard codified in Rule 11 and interpreted by the Rhode Island Supreme Court in Williams. The affidavit is the only evidence that suggests Araujo understood and admitted to the burglary charge, and the Rhode Island Supreme Court has held that an affidavit by itself is insufficient to meet Rule 11's requirements. See State v.Feng, 421 A.2d at 1267-68. Accordingly, this Court finds that Araujo's nolo contendere plea was entered without an understanding of the nature of the charge and vacates petitioner's plea entered on April 25, 1994. *Page 14 
 Conclusion
After reviewing the record, the Court finds that the petitioner's nolo contendere plea was not entered in compliance with Rule 11. Consequently, the petitioner's application for post-conviction relief is granted. Counsel shall submit an appropriate order for entry.
[1] Araujo sought counsel at this time because the federal government is seeking to deport him based on his 1994 conviction. Araujo alleges that his new attorney informed him of the deficiencies in his 1994 plea; and consequently, Araujo brings this application for post-conviction relief.
[2] As the State does not clear the initial hurdle of proving unreasonable delay, it is not necessary for this Court to analyze whether actual prejudice to the State exists. Nonetheless, this Court notes that the State — after having been given an opportunity to do so — has submitted no evidence to suggest that the delay has resulted in actual prejudice.