390 A.2d 909.

ELL JOHNSON *v.* JAMES MULLEN, *Warden.*

AUGUST 16, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger,  JJ.

KELLEHER, J.   This is an appeal from a judgment entered in the Superior Court denying an application for postconviction relief which was instituted pursuant to G.L. 1956 (1969 Reenactment) ch. 9.1 of title 10. The applicant (Johnson) seeks to vacate a plea of nolo contendere he gave in 1968 to an indictment charging him with possession of burglar tools. His application is founded upon his sworn assertions that his 1968 plea cannot be classified as a voluntary and intelligent act because he was not fully informed as to certain matters.

In March 1968 Johnson appeared before a justice of the Superior Court and, through private counsel, entered tentative pleas of nolo contendere to three felony indictments and three misdemeanor complaints. The three indictments charged Johnson with robbery, breaking and entering a building in the night-time with intent to commit larceny, and possession of burglar tools. The misdemeanor complaints were for larceny, speeding, and receiving stolen goods. Once the justice discovered that a presentence report had not been prepared, he postponed the imposition of sentence and gave Johnson the right to withdraw his plea.

About 7 weeks later, in May, Johnson once again stood before the justice. At that time he was represented by an attorney from the Office of the Public Defender. The sentencing justice addressed Johnson directly and explicated various consequences of his pleading to all of the charges.

Johnson indicated that he understood his rights and the rami-
fications of pleading. He then stated that he wished to plead
nolo contendere to the six offenses. Thereafter, Johnson was
sentenced to 15 months at the Adult Correctional Institutions
on the breaking-and-entering charge and given concurrent
sentences of 10, 60, and 60 days, respectively, on the charges
involving speeding, larceny, and receiving stolen goods.
Sentence was deferred on the burglar-tools charge, and a
5-year suspended sentence was given on the robbery indict-
ment which might be imposed anytime during a 5-year pro-
bationary period.

In May 1968 there was then pending against Johnson a
federal narcotics charge. The assistant attorney general
called this fact to the attention of the sentencing justice. After
Johnson had completed serving his 15-month breaking-and-
entering sentence, he was transferred to a federal institution,
where he was incarcerated because of the narcotics charge.
Johnson was released from federal custody in the summer of
1973.

Later, in March 1974, Johnson was adjudged to be a
violator of the terms of his deferred and suspended sentences.
The basis for the violation was a robbery charge which was
totally unrelated to the robbery charge that was the subject
of the May 1968 plea. As a violator, Johnson was sentenced to
serve 5 years on the 1968 robbery charge to be followed by a
consecutive 7-year sentence which was imposed because of
the burglar-tools charge.

This application for postconviction relief was filed in June
1976.[1] In his application Johnson maintained that the 7-year

---

[1] This is not the first time that Johnson has sought relief from the 7-year sentence.
In *State* v. *Johnson*, 115 R.I. 550, 349 A.2d 609 (1976), he brought an action under
Super. R. Crim. P. 35 to vacate his sentence on the ground that it contravened the
time limitations of the deferred-sentencing statute. G.L. 1956 (1969 Reenactment)
§12-19-19. That section provides that the Superior Court may only impose a sen-
tence for the violation of a deferred sentence within 5 years of its pronouncement.
The statute does, however, provide for two exceptions which extend the 5-year

sentence for possession of burglar tools was illegally imposed because the 1968 plea upon which it was founded did not measure up to constitutional standards. In particular, he claims that his rights were violated in 1968 because (1) he was not informed of the maximum punishment which he could receive on the possession charge, (2) the record fails to disclose that there was a factual basis to support his plea, and (3) he was unfamiliar with the workings of our deferred-sentence statute.

The Superior Court justice who heard this application ruled on only one of Johnson's claims. The hearing justice determined that the sentencing justice was under no obligation to apprise Johnson, either prior to accepting the plea or when imposing sentence, of the ins and outs of the deferred-sentence mechanism which is set forth in G.L. 1956 (1969 Reenactment) §12-19-19. However, the hearing justice felt that if such an obligation existed, Johnson was still not entitled to relief. In the justice's opinion a fair reading of the May 1968 proceeding demonstrated that Johnson had been erroneously informed that a deferred sentence would hang over his head for all time in the future. Consequently, although Johnson may not have been told of the precise operation of the deferred sentence, he was not prejudiced since the description given him about the deferred sentence was much more severe than it could lawfully be. Naturally, Johnson disagrees with the hearing justice's reasoning.

Before addressing the issues raised in Johnson's application, we would note that before us Johnson makes several additional claims as to why his 1968 plea should be set aside. Since these grounds for relief were not raised in his original application, we decline to consider them at this time. The appropriate forum for the initial hearing on such matters is the Superior Court. Section 10-9.1-2. The Legislature has

period: (1) if the offender is then serving a sentence imposed on another case and (2) if during the 5-year period he is sentenced to prison for another offense. In Johnson's case we found that both of these exceptions could be used as a basis for extending the 5-year limitation period.

established an orderly procedure for dealing with postconviction applications whereby claims are heard and, if necessary, evidence produced to provide a complete record for review. We will not sanction departures from that procedure absent the most pressing circumstances. This case does not present such a situation. Johnson may, of course, file another application which may be heard in the Superior Court if the requirements of §10-9.1-8 are satisfied.[2]

No one disagrees with the general proposition of constitutional law underlying this appeal. By pleading guilty or nolo contendere to criminal charges, a defendant waives several federal constitutional rights and consents to the judgment of the court. *Boykin* v. *Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L. Ed. 2d 274 (1969); *McCarthy* v. *United States*, 394 U.S. 459, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *State* v. *Welch*, 112 R.I. 321, 309 A.2d 128 (1973); *Flint* v. *Sharkey*, 107 R.I. 530, 268 A.2d 714 (1970). Consequently, out of just consideration for persons accused of crimes, the federal due process clause mandates that waivers of constitutional rights must, when viewed in light of the totality of the circumstances, be voluntary and "knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* v. *United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747, 756 (1970); *Johnson* v. *Zerbst*, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *Bishop* v. *Langlois*, 106 R.I. 56, 256 A.2d 20 (1969); *Northrop* v. *Langlois*, 100 R.I. 349, 215 A.2d 926 (1966); *Cole* v. *Langlois*, 99 R.I. 138, 206 A.2d 216 (1965). This standard serves as the litmus paper against which all guilty or nolo pleas must be tested. While the parties are in agreement as to these fundamental principles, they differ on whether the constitutional requirements have been met in this case.

---

[2]In pertinent part G.L. 1956 (1969 Reenactment) §10-9.1-8 provides:

"Any ground finally adjudicated or not so raised * * * may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief."

At the outset we can easily dispose of Johnson's claim that there must be a factual basis for a nolo plea clearly set forth on the record. Although Super. R. Crim. P. 11, effective as of September 1, 1972, now provides that a "court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea," 10 years ago, in May 1968, there was no such court rule necessitating the sentencing justice to conduct such an inquiry. Nor was there in 1968 or now, for that matter, any constitutional requirement that a nolo plea have a factual basis.

We find persuasive the fact that under federal criminal procedure no factual basis for a nolo plea need be established by the trial justice. *See* Fed. R. Crim. P. 11; *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *United States* v. *Prince,* 533 F.2d 205 (5th Cir. 1976); *United States* v. *Wolfson,* 52 F.R.D. 170 (D. Del. 1971), *aff'd* 474 F.2d 1340 (3d Cir. 1973). Furthermore, even though a nolo plea in Rhode Island is, for all practical purposes, equivalent to a plea of guilty, *Cole* v. *Langlois,* 99 R.I. 138, 206 A.2d 216 (1965), the factual basis rule with regard to guilty pleas has been deemed a product of Fed. R. Crim. P. 11 and prudent policy rather than a constitutional requirement. *Christopher* v. *United States,* 541 F.2d 507 (5th Cir. 1976); *Edwards* v. *Garrison,* 529 F.2d 1374 (4th Cir. 1975), *cert. denied,* 424 U.S. 950, 96 S. Ct. 1421, 47 L. Ed. 2d 355 (1976); *Roddy* v. *Black,* 516 F.2d 1380 (6th Cir.), *cert. denied,* 423 U.S. 917, 96 S. Ct. 226, 46 L. Ed. 2d 147 (1975); *Freeman* v. *Page,* 443 F.2d 493 (10th Cir.), *cert. denied,* 404 U.S. 1001, 92 S. Ct. 569, 30 L. Ed. 2d 554 (1971).

Since the sentencing justice was under no constitutional directive to ascertain whether there was a factual basis for Johnson's plea, we must deny this facet of his appeal.

As we have previously observed, in order for a plea to a criminal charge to be a voluntary and knowing act, a defendant must be aware of the consequences of his plea. Prior to our rulings in *Bishop* v. *Langlois,* 106 R.I. 56, 256 A.2d 20 (1969), and the United States Supreme Court's decision in

*Boykin* v. *Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969),[3] it was incumbent upon a trial justice, before accepting a plea, to personally ascertain from an accused, even if represented by counsel, whether he was aware of the nature and consequences of his plea, and to admonish him of those consequences if it appeared that he was not otherwise knowledgeable thereof. *Flint* v. *Sharkey,* 107 R.I. 530, 268 A.2d 714 (1970); *Harris* v. *Langlois,* 100 R.I. 196, 212 A.2d 715 (1965); *Cole* v. *Langlois,* 99 R.I. 138, 206 A.2d 216 (1965). However, if the justice failed to perform his duties in this regard, the defendant bore the burden of showing "by a preponderance of the evidence that he was not otherwise aware and appreciative of the consequences of the plea." *Hall* v. *Langlois,* 105 R.I. 642, 644, 254 A.2d 282, 283 (1969); *Harris* v. *Langlois,* 100 R.I. at 198, 212 A.2d at 716; *Cole* v. *Langlois,* 99 R.I. at 143, 206 A.2d at 219. Thus, in order to vacate his plea, Johnson assumed a twofold burden. First, he must point to where in the record it is demonstrated that the trial justice did not perform his duty, and second, he must convince the factfinder that he was not otherwise aware of the consequences of his plea.

Unquestionably, one of the direct consequences of entering a plea a defendant should appreciate is the length of any possible imprisonment which may be imposed. *Cheely* v. *United States,* 535 F.2d 934 (5th Cir. 1976); *United States* v. *Saldana,* 505 F.2d 628 (5th Cir. 1974); *Eagle Thunder* v. *United States,* 477 F.2d 1326 (8th Cir.), *cert. denied,* 414 U.S. 873, 94 S. Ct. 142, 38 L. Ed. 2d 92 (1973); *Combs* v. *United States,* 391 F.2d 1017 (9th Cir. 1968); Annot., 97 A.L.R.2d 549 §§7 and 8 (1964); Wright, *Federal Practice and Procedure* §173 n.56 (1969). The record in this case

---

[3]If a nolo plea was entered subsequent to June 2, 1969, or July 16, 1969, the respective publication dates of *Boykin* v. *Alabama,* 395 U.S. 238, 87 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and *Bishop* v. *Langlois,* 106 R.I. 56, 256 A.2d 20 (1969), the plea will be vacated unless the record shows that the sentencing judge has conducted an examination of the defendant before accepting the plea to determine if the plea is being given voluntarily with an understanding of the nature of the charge and the consequences of the plea.

reveals that when Johnson's nolo pleas to the six charges were accepted in May 1968, the sentencing justice did raise the issue of punishment. The justice addressed Johnson and stated:

> "Now, by such a plea the court can sentence you to the minimum, the maximum or anywhere in between on these various offenses that have been charged against you, including the very serious one of robbery in which the minimum is five years and the maximum is life."

At that time Johnson indicated that he understood the potential penalty. He now contends that simply because the sentencing justice did not mention the specific penalty for the possession-of-burglar-tools charge, his plea must be vacated. We do not subscribe to this proposition.

We do not believe that the sentencing justice's further admonition that the charge of possession of burglar tools carried a 10-year maximum sentence would have contributed to Johnson's better understanding of the penal consequences of his plea or in any way affected the knowing entry of the plea. Johnson was told that in pleading nolo contendere to all of the charges the court could sentence him to life imprisonment. Nevertheless, he stood before the court with his attorney, stated that he understood the penalty, and still wished to plead nolo. The possibility that knowledge of the punishment for the burglar-tools offense prevented him from understandingly evaluating the choice to plead or proceed to trial strikes us as being highly improbable. In fact, nowhere in his petition for postconviction relief or in his supporting affidavit does Johnson suggest that had he known of the penalty for this particular offense, he would not have entered his plea. We, therefore, find that the sentencing justice fulfilled his duty to make Johnson aware of the penal consequences of his plea.

Our decision on this facet of the appeal finds support in the rulings of several other jurisdictions. In *People* v. *Marshall*, 23 Ill. 2d 216, 177 N.E. 2d 835 (1961), more recently relied

upon in *People* v. *Chatman*, 56 Ill. 2d 233, 306 N.E. 2d 874 (1974), the defendant was charged under a two-count indictment for robbery and armed robbery. In accepting the defendant's plea, the trial court only informed him of the penalty for the more serious charge of armed robbery, which was life imprisonment. The Illinois Supreme Court held that the defendant had been sufficiently admonished of the consequences of his plea. Likewise, in *State* v. *Taylor*, 529 S.W. 2d 427 (Mo. App. 1975), the defendant was only informed of the sentence for the more serious of two charges. The court believed that the defendant knew at least the most serious likely consequences of his plea and did not have to be made aware of the penalty for the lesser crime.

We now come to what really lies at the heart of Johnson's present woes — the deferred sentence. In particular, Johnson complains that neither the sentencing justice nor his own attorney explained to him that the 5-year deferral period under §12-19-19 would be automatically extended by the 15-month jail term for breaking and entering or by sentencing on the federal narcotics charge that was pending against him. In support of this claim, Johnson placed on the record his own affidavit and that of his May 1968 attorney. Johnson, of course, categorically denies ever having been told about the deferred-sentence mechanism by the court or his attorney. His counsel stated that he had no recollection of whether he explained the deferred sentence to Johnson. Due to his lack of understanding, Johnson claims that his violation on the deferred sentence in 1974 took him completely by surprise.

On this facet of his appeal, Johnson raises a very narrow issue. He does not contend that in every instance a trial court, before accepting a plea, must anticipate the possibility that it will ultimately impose a deferred sentence and accordingly inform the accused of the ramifications of this contingency. A defendant has no right to be informed prior to actual sentencing of the specific penalty which the court will impose. *Hinds* v. *United States*, 429 F.2d 1322 (9th Cir. 1970); *Burch*

v. *United States,* 359 F.2d 69 (8th Cir. 1966); *Smith* v. *United States,* 324 F.2d 436, 116 U.S. App. D.C. 404 (1963), *cert. denied,* 376 U.S. 957, 84 S. Ct. 978, 11 L. Ed. 2d 975 (1964). Johnson simply contends that when a plea is entered as part of a plea-bargaining situation and the court has determined beforehand that it will impose a deferred sentence, the defendant must be informed of the operation of the deferred sentence in order to knowingly waive his trial-related rights.

For the purposes of disposing of the final phase of Johnson's appeal, we will assume that in a plea-bargaining situation the accused must be fully apprised of the mechanism of a deferred sentence if that penalty is an ingredient of the deal. *See State* v. *Welch,* 112 R.I. 321 309 A.2d 128 (1973). Even so, we do not believe that Johnson is entitled to relief.

Even if the sentencing justice did not seek to ascertain whether Johnson understood the penal elements of the plea bargain, Johnson still bore the burden of proving by a preponderance of the evidence that he was not otherwise aware of the consequences. *Flint* v. *Sharkey,* 107 R.I. 530, 268 A.2d 714 (1970); *Harris* v. *Langlois,* 100 R.I. 196, 212 A.2d 715 (1965); *Cole* v. *Langlois,* 99 R.I. 138, 206 A.2d 216 (1965). The only substantiation for Johnson's claim of lack of awareness is his own affidavit. On the other hand, there is evidence on the record which indicates that Johnson was informed about the deferred-sentencing part of his plea bargain and, nevertheless, was willing to plead nolo.

First of all, there is a representation to the sentencing justice by Johnson's counsel, who participated in the plea bargaining, that he discussed "all of the ramifications" of pleading with his client. Now, the attorney has stated by affidavit that he doesn't remember what he told his client regarding the deferred-sentence part of the bargain. Johnson claims that this demonstrates that he was not informed by counsel. Surely, the attorney's candid admission that he doesn't remember what he told Johnson does not establish

"by a preponderance of the evidence" that Johnson was not informed about the deferred-sentence mechanism.

Also, at the time of his plea Johnson, represented by counsel, signed a document entitled "Agreement under which Sentence is deferred." The agreement reads as follows:

> "It is hereby agreed that sentence may be deferred on the above entitled indictment upon payment of all costs, during the good behavior of the defendant, and so long as the Attorney General is satisfied that the defendant has violated none of the criminal laws of this State or any other state, since the date of this agreement."

While the agreement erroneously sets forth the statutory time in which the attorney general can seek the imposition of a sentence originally deferred, the agreement specifically provides that the state will have a never-ending jurisdiction over Johnson. Thus, Johnson could not have been totally unaware in May 1968 that any subsequent criminal act would subject him to the risk of being sentenced on the burglar-tools charge. Of course, by 1974, when he was violated on the deferred sentence, he may have forgotten what he once knew in 1968. But, in testing the validity of a plea, we only look to the state of affairs at the time the plea was entered, and not the accused's apparent present misconception or lack of knowledge.

Furthermore, the misinformation regarding the time in which a deferred sentence could be imposed certainly could not have prejudiced Johnson at the time he entered his plea. He chose to plead based upon information about the deferred sentence which made it appear much more severe than it could lawfully be. We do not believe that an actual awareness of the workings of §12-19-19's 5-year period would have affected Johnson's decision to plead in the slightest. In fact, he makes no claim that it did.

Finally, we note that Johnson argues that we should apply the *Bishop* and *Boykin* on-the-record standard to a plea that

was entered a year before those decisions. In *Flint* v. *Sharkey*, 107 R.I. 530, 268 A.2d 714 (1970), we held that those cases could not be applied retroactively. Thus, an accused canot prevail in this type of proceeding by pointing to a pre-*Bishop* or *Boykin* record which quite understandably fails to disclose an examination by the court into the voluntariness or knowing nature of the plea being offered. To the contrary, our decision in *Cole* makes it clear that if a defendant is to prevail, he also must not be aware of the consequences of the plea from other sources, such as his own or the state's attorney, and he bears the burden of showing this unawareness.

The applicant's appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the case is remanded to the Superior Court.

*William F. Reilly*, Public Defender, *Dale G. Anderson*, Assistant Public Defender, for appellant.

*Julius C. Michaelson*, Attorney General, *E. Martin Stutchfield*, Special Assistant Attorney General, for appellee.