DECISION
Before this Court is the application of Luis Jorge ("Jorge" or "petitioner") for post-conviction relief. Jorge contends that the plea of nolo contendere that he entered on May 1, 1986 did not comply with Rule 11 of the Superior Court Rules of Criminal Procedure.[1] Jorge now seeks post-conviction relief pursuant to G.L. 1956 § 10-9.1-1. The State of Rhode Island ("State") moves to dismiss petitioner's application.
 I Facts and Travel
On May 1, 1986, Jorge, assisted by counsel and a court interpreter, entered a plea of nolo contendere to one count of second degree child molestation sexual assault, G.L. 1956 § 11-37-8.3, as amended by P.L. 1988, ch. 219, § 1.[2] The charge to which Jorge pled nolo contendere concerned sexual contact with his daughter, Sandra I. Jorge. The trial justice who heard and accepted Jorge's plea sentenced him to ten years suspended sentence with ten years probation. (J. of Conviction and Commitment.) The trial justice also prohibited Jorge from residing in his *Page 2 
family's home and limited visits to his family's home to those conducted under the supervision of the Rhode Island Department of Children and Families, the predecessor agency to the Rhode Island Department of Children, Youth, and Families. Id. Petitioner states that he completed his sentence without incident, an assertion that the State does not challenge. (Mem. of Law in Supp. of Def.'s [sic] Objection to State's Mot. to Dismiss 1 [hereinafter Petitioner's Mem. of Law].)
At some later date the federal government instituted removal proceedings against Jorge based on his 1986 nolo contendere plea.[3]
On August 21, 2007, the petitioner submitted the application for post-conviction relief presently before this Court. Pursuant to that application, the petitioner moves the Court to vacate his 1986 plea on the grounds that it was entered in violation of Rule 11. (Petitioner's Mem. of Law 2.) Specifically, the petitioner claims that the plea colloquy between the trial justice, petitioner, and petitioner's trial counsel does not evidence that the petitioner entered his plea "informed of the crime's elements." Id. 4.
In support of his motion the petitioner submitted an affidavit from his daughter, Sandra I. Jorge ("Ms. Jorge"), the victim of his sexual assault charge. In that affidavit Ms. Jorge states that the petitioner returned to live with his family, including Ms. Jorge, after completing his sentence. (Aff.) She states that "[t]here have been no other incidents of misconduct" since her father's return to the family home.Id. She adds,
 "My father is a good person who made a terrible decision as a result of his alcoholism. I have long since forgiven him. He stopped drinking many years ago and is a good husband to my mother and a good grandfather to my five children. . . . If he is deported to Portugal, my mother will lose a husband, I will lose my father and my children will lose their grandfather." Id. *Page 3 
The State moves to dismiss petitioner's application for post-conviction relief for three reasons: first, that the petitioner failed to satisfy the procedural requirements imposed by § 10-9.1-1; second, that the defense of laches bars the relief requested by the petitioner; and third, that the petitioner's substantive claim of a Rule 11 violation is without merit. (Supplemental Mem. of Def. State of Rhode Island in Supp. of Mot. to Dismiss 1-2 [hereinafter State's Supplemental Mem.].) To support its first reason for dismissal, the State claims that the petitioner has failed to identify any specific grounds for relief.Id. 1. The State contends that the petitioner has not "specifically set forth the grounds upon which the application [for post-conviction relief] is based," as required by G.L. 1956 § 10-9.1-4. (Mem. in Supp. of State's Mot. to Dismiss Pet'r Application for Post-Conviction Relief 1 [hereinafter State's Mem.]; State's Supplemental Mem. 1.) To support its second reason for dismissal, the State claims that the defense of laches bars the petitioner's application. Id. 4. To support its third reason for dismissal the State offers three distinct arguments — that the petitioner's application is "clearly just a transparent effort to avoid deportation" and, thus, "beyond the authority of this Court's jurisdiction;" that Ms. Jorge's affidavit "provides no grounds upon which to vacate the defendant's [sic] plea" and lacks credibility; and that the petitioner has "fail[ed] to provide any evidence of how specifically Rule 11 was allegedly violated or how he was prejudiced thereby." (State's Supplemental Mem. 1-3.)
 II Motion to Dismiss Pursuant to § 10-9.1-1
Rhode Island's post-conviction relief statute provides for claims that a "conviction . . . was in violation of the constitution of the United States or the constitution or laws of this state" to be brought to correct the violative action. Section 10-9.1-1(a)(1). An application for post-conviction relief brought under this statutory scheme "shall identify the proceedings in which the *Page 4 
applicant was convicted, give the date of the entry of the judgment and sentence complained of, specifically set forth the grounds upon which the application is based, and clearly state the relief desired," among other requirements. Section 10-9.1-4. In this matter, the State has challenged only the petitioner's specification of grounds upon which the application is based. (State's Supplemental Mem. 1.) Therefore, the Court will not inquire as to the petitioner's satisfaction of the other requirements imposed by § 10-9.1-4.
The Court is mindful that there is a well-defined standard through which it must examine the State's contention. "The court may grant a motion by either party for summary disposition of the application when . . . there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Section 10-9.1-6(c). InPalmigiano v. State, the Rhode Island Supreme Court explained,
 "The standards for granting a § 10-9.1-6(c) motion are identical to those utilized in passing on a summary judgment motion. As [s]he does in considering motions for summary judgment, the trial justice must consider the affidavits and pleadings on a motion for summary disposition in the light most favorable to the party against whom the motion is made. Based upon the affidavits and pleadings, the trial justice must decide whether or not a genuine issue of material fact exists. If not, the moving party is entitled to summary disposition if otherwise entitled as a matter of law." 120 R.I. 402, 387 A.2d 1382, 1385
(1978).
Two years later our Supreme Court again addressed the proper standard to be used by a trial justice presented with a § 10-9.1-6(c) motion. InDoyle v. State, the Supreme Court added that "summary judgment could be granted . . . only under circumstances in which such judgment might be rendered pursuant to Rule 56 of the Superior Court Rules of Civil Procedure." 122 R.I. 590, 411 A.2d 907, 909 (1980). Rule 56 provides, in pertinent part, that judgment should be summarily granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Super. R. Crim. P. 56(c). *Page 5 
The Rhode Island Supreme Court has characterized summary judgment as an "extreme remedy" that should be "applied cautiously." Golderese v.Suburban Land Co., 590 A.2d 395, 397 (R.I. 1991). Accordingly, summary judgment under Rule 56 is properly granted only if there are no material facts in dispute. Richard v. Blue Cross Blue Shield, 604 A.2d 1260,1261 (R.I. 1992). "When determining whether any genuine issue of material fact exists, the trial justice . . . views the pleadings, affidavits, and other relevant documents in the light most favorable to the opposing party." Mullins v. Federal Dairy Co., 568 A.2d 759, 761
(R.I. 1990). "Even though the moving party must establish the absence of a material factual issue, the party opposing the motion has an affirmative duty to establish either by affidavit or by other means the material issue of fact to be decided." Grissom v. Pawtucket TrustCo., 559 A.2d 1065, 1066 (R.I. 1989). "`[G]enuine' means that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party. By like token, `material' means that a contested fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Smith v.F.W. Morse Co., 76 F.3d 413, 428 (1st Cir. 1996).[4]
As in any summary judgment context, this Court, in considering the State's § 10-9.1-6(c) motion, is highly restricted in its review of the factual record. The Court "may not pass on the weight or credibility of the evidence." Doyle, 411 A.2d at 909. In fact, "a trial justice may not resolve issues of fact upon a motion for summary judgment but may only determine whether such issues exist." Id.; see Capital Properties, Inc.v. State, 749 A.2d 1069, 1079-80 (R.I. 1999) ("During a summary judgment proceeding the court does not pass upon the weight or credibility *Page 6 
of the evidence. . . . The Court's purpose during the summary judgment procedure is issue finding, not issue determination.") (internal citations and quotation marks omitted). The Doyle Court, reviewing the petitioner's application for post-conviction relief based on the claim that he did not voluntarily enter his plea, found that "the trial justice was in error in not allowing petitioner an evidentiary hearing on the issue of the voluntariness of his plea." Doyle, 411 A.2d at 908,909. The Supreme Court instructed the trial justice to provide the petitioner a hearing in which the petitioner was entitled to present relevant witnesses and cross-examine his trial counsel. Id. at 909. The trial justice was also allowed to consider the transcript of prior hearings related to the petitioner's application for post-conviction relief. Id.
Summary judgment under Rule 56 and dismissal of an application for post-conviction relief deviate procedurally in one major facet. Unlike the Rule 56(c) summary judgment context which entitles a non-moving party to a hearing and an opportunity to respond to the moving party's claims, Super. R. Civ. P. 56(c), a trial justice considering a §10-9.1-6(c) motion must simply notify the petitioner of the Court's proposed dismissal without a hearing. State v. Frazar, 776 A.2d 1062,1063 (R.I. 2001) (Frazar I); see Salvadore v. Major Elec. Supply,Inc., 469 A.2d 353, 356 (R.I. 1983) (noting, "the adverse party must be given an opportunity to respond pursuant to Rule 56(c)"). According to the Frazar I Court, the trial justice must give the petitioner "an opportunity to reply to the hearing justice's proposed dismissal without a hearing . . . and to argue why the court should hold such a hearing in light of the allegations in [the supporting] affidavit." Id. at 1064.
In the matter presently before the Court, the State contends that the petitioner's initial and amended application for post-conviction relief "fails to state any specific grounds for relief and should be dismissed." (State's Supplemental Mem. 1.) Turning to "the affidavits and pleadings . *Page 7 
. . in the light most favorable to the party against whom the motion is made," Palmigiano, 387 A.2d at 1385, this Court is cognizant that before proceeding any farther "the moving party must establish the absence of a material factual issue." Grissom, 559 A.2d at 1066.
The petitioner clearly pointed to the May 1, 1986 plea colloquy involving the petitioner, his trial counsel, and the trial justice as the basis of his application for post-conviction relief. (Pet'r Mot. to Amend Application for Post-Conviction Relief Pursuant to Rhode Island General Laws, § 10-9.1-8 [hereinafter Motion to Amend].) The petitioner claims that the plea colloquy violated Rule 11. Id. More importantly for purposes of the State's § 10-9.1-6(c) motion, the petitioner's supporting memorandum expounds on his contention by providing factual and legal arguments to buttress his application. (Pet'r Mem. of Law 2-5.) Specifically, Jorge claims that his trial counsel entered a nolo contendere plea on his behalf "[w]ithout ever mentioning the actual charge Mr. Jorge pleaded not guilty to or the actual charge to which he was about to plead nolo contendere to. . . . In fact, no where in the seven page transcript does the Court or Mr. Jorge's attorney ever mention the actual charge let alone the elements of that charge as the law demands." Id. 4. In response, the State argued, "A review of the entire plea colloquy indicates that he was informed of all of his rights as well as the elements of the crime with which he was charged and that he knowingly, voluntarily and intelligently entered a plea to the charge." (State's Supplemental Mem. 2-3.)
The stark contrast between the arguments put forth by the petitioner and the State indicates that there is a factual dispute concerning the plea colloquy. Whether the discussion that occurred on May 1, 1986 satisfied the Rule 11 requirements undoubtedly constitutes "a contested fact [that] has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Smith, 76 F.3d at 428. Moreover, the record of *Page 8 
the plea colloquy "is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party," the petitioner. Id. Consequently, this Court finds that a genuine issue of material fact exists. Since a § 10-9.1-6(c) motion is not the appropriate procedural posture in which to resolve issues of fact but merely to determine whether such issues exist, the Court proceeds to consider additional preliminary matters. Doyle,411 A.2d at 909.
 III Defense of Laches
The State claims that the defense of laches bars the petitioner's application for post-conviction relief. (State's Supplemental Mem. 4.) The invocation of the laches defense in the context of an application for post-conviction relief is a recent development in Rhode Island, but nonetheless one that the Rhode Island Supreme Court has adopted.Raso v. Wall, 884 A.2d 391, 394 (R.I. 2005).
The Supreme Court has identified a two-pronged standard that must be met for the State's successful use of the laches defense. "[T]he State has the burden of proving by a preponderance of the evidence that the applicant unreasonably delayed in seeking relief and that the state is prejudiced by the delay." Id. at 395. "Whether or not there has been unreasonable delay and whether prejudice to the adverse party has been established are both questions of fact, and a determination must be made in light of the circumstances of the particular case." Id. at 396.
To support the first prong of the two-part test the State argues that the petitioner's application, filed twenty-two years after entering his plea, "is just an attempt to avoid deportation. Clearly this would meet the first element of the two-pronged test. . . ." (State's *Page 9 
Supplemental Mem. 4.) The State provides no additional explanation to support its contention that the petitioner's delay was unreasonable.
Nonetheless, assuming arguendo that the Court determined that the petitioner's delay was unreasonable, the State is still required to show that it is prejudiced by the delay. Raso, 884 A.2d at 395. In support of this prong of the Raso test the State argues, "[t]here is no doubt that it would be impossible to prosecute the criminal case in the year 2007 based on a child molestation which occurred in 1984-85, and involving a victim who is now an adult who forgives the perpetrator of the crimes against her." (State's Supplemental Mem. 4-5.)
The State's argument that it is prejudiced because the victim has forgiven the petitioner is distinct from situations in which other courts considering the defense of laches in the context of post-conviction relief have found prejudice. In a case cited by our Supreme Court in Raso, the Supreme Court of Colorado found that the State was prejudiced because "the only witness who could respond to [the petitioner's] claim is now deceased." Robbins v. People, 107 P.3d 384,391 (Colo. 2005) (cited with approval in Raso, 884 A.2d at 395). In addition, two courts cited in Raso found prejudice where transcripts of the original hearing had been destroyed pursuant to routine court procedures. In Oliver v. United States, the Seventh Circuit Court of Appeals found that the government was prejudiced "because of its destruction of records after ten years." 961 F.2d 1339, 1342 (7th Cir. 1992). Similarly, a Florida intermediate appellate court found that the State was prejudiced by the petitioner's delay because "court transcripts are routinely destroyed after 10 years and the State now has no transcript in existence to refute, or prove, [the petitioner's] claim." Wright v. State, 711 So.2d 66, 68 (Fla.Dist.Ct.App. 1998) (cited with approval in Raso, 884 A.2d at 395). *Page 10 
As was suggested by the courts which persuaded our Supreme Court inRaso, prejudice is more than mere difficulty in prosecuting a criminal matter. The State's contention that it would be impossible to prosecute the petitioner because the victim appears to have forgiven Jorge is unavailing. Consequently, the defense of laches does not bar the petitioner's application for post-conviction relief. The Court, therefore, proceeds to consider the merits of the petitioner's application.
 IV Claim of Rule 11 Violation A Constitutional Rights Implicated by Court Rule
Turning now to the petitioner's claim that the nolo contendere plea he entered on May 1, 1986 violated Rule 11, the Court is mindful that "[t]he disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called `plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged." Santobello v. New York,404 U.S. 257, 260 (1971). "In Rhode Island a nolo [contendere] plea is equivalent to a plea of guilty." State v. Feng, 421 A.2d 1258, 1266 (R.I. 1980).
"[W]hen a defendant enters a plea of nolo contendere, the defendant `waives several federal constitutional rights and consents to judgment of the court.'" State v. Moniz, 933 A.2d 691, 695 (R.I. 2007) (quotingJohnson v. Mullen, 120 R.I. 701, 390 A.2d 909, 912 (1978)). Specifically, a defendant who pleads guilty or nolo contendere "waiv[es] her rights to a trial by jury, the presumption of innocence, the privilege against self incrimination, and the rights to confront and cross-examine her accusers, to testify and to call witnesses in her own defense, to be proven guilty beyond a reasonable doubt and to appeal a conviction. . . ." State v. Williams, *Page 11 122 R.I. 32, 404 A.2d 814, 818 (R.I. 1979) (quoted in Moniz,933 A.2d at 695).[5] The Court recognizes that these protections are "fundamental rights" whose abandonment by an accused is an unquestionably difficult but nonetheless permissible choice. United States v. Mezzanatto,513 U.S. 196, 209-10 (1995). These rights are implicated by the United States Constitution's Fifth Amendment and applicable to the states through the Fourteenth Amendment. Boykin v. Alabama, 395 U.S. 238, 243
(1969).
To satisfy the constitutional imperatives a trial justice presented with a plea of nolo contendere "must determine that the defendant has entered the plea both voluntarily and intelligently." Moniz,933 A.2d at 695; State v. Thomas, 794 A.2d 990, 993 (R.I. 2002). "[T]he plea could not be voluntary in the sense that it constituted an intelligent admission that [the defendant] committed the offense unless the defendant received `real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" Henderson v. Morgan, 426 U.S. 637, 645 (1976) (quotingSmith v. O'Grady, 312 U.S. 329, 334 (1941)). In contrast, "[a] plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Henderson, 426 U.S. at 645
n. 13. "[A]n intelligent plea does not necessarily mean that the plea is wise. Rather, it indicates that defendants are aware of the consequences of their pleas." Moniz, 933 A.2d at 696. *Page 12 
Accordingly, the Superior Court codified in Rule 11 the procedure for ensuring that the constitutional requirements that a nolo contendere plea be voluntary and intelligent. Rule 11 provides in relevant part that the justice receiving a plea
 "shall not accept . . . a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. . . . The court shall not enter a judgment upon a plea of . . . nolo contendere unless it is satisfied that there is a factual basis for the plea." Super. R. Crim. P. 11.
Echoing the plain text of the rule, the Williams Court explained that Rule 11 "requires only that at the conclusion of the plea hearing, the trial justice should be able to say with assurance that the accused is fully aware of the nature of the charge and the consequences of the plea." Williams, 404 A.2d at 819 (discussing Henderson v. Morgan,426 U.S. 637 (1976)).
To determine whether the process mandated by the federal constitution and Rule 11 has been satisfied, at the conclusion of the plea hearing the trial justice "should advise and admonish the defendant about the nature of the charges . . . [and] ascertain whether [the] criminal defendant was made aware of the consequences of the plea and the rights that the defendant was giving up." Thomas, 794 A.2d at 993. "A plea `will be vacated unless the record shows that the court has conducted an on-the-record examination of the defendant before accepting [the] plea [in order] to determine if the plea is being made voluntarily with an understanding of the nature of the charge and the consequence of the plea.'" Carpenter v. State, 796 A.2d 1071, 1073 (R.I. 2002) (quotingFlint v. Sharkey, 107 R.I. 530, 268 A.2d 714, 719 (1970)) (alteration in original). "Thus, a trial court `should engage in as extensive an interchange as necessary so that the record as a whole and the circumstances in their totality will disclose to a court reviewing a guilty or nolo plea that the defendant understood the nature of the charge and the consequences of the plea.'" Frazar I, 776 A.2d at 1063
(quoting Feng, 421 A.2d at 1267). *Page 13 
Upon an application for post-conviction relief based on a claim that Rule 11 was not satisfied, a petitioner "bear[s] the burden of proving by a preponderance of the evidence that [he] did not intelligently and understandingly waive [his] rights." State v. Figueroa, 639 A.2d 495,498 (R.I. 1994). "[A] plea [that] has been accepted without conforming to the requirements of the rule . . . must be set aside. . . ."Frazar I, 776 A.2d at 1063 (quoting Reporter's Notes to Rule 11).
The Rhode Island Supreme Court has repeatedly addressed applications for post-conviction relief based on claims that the petitioner's plea of guilty or nolo contendere was entered in violation of Rule 11. In a foundational case exploring the requirements imposed by Rule 11, theWilliams Court considered whether the petitioner's guilty plea was entered erroneously. 404 A.2d at 816. The Court examined the record and noted several key factors regarding the plea colloquy. First, the Court noted that the petitioner submitted an affidavit with her plea request in which she stated that she understood that she was "admitting sufficient facts to substantiate the charge(s)" brought against her.Id. at 820. Second, the Court noted that the petitioner's trial counsel submitted a certification in which the attorney stated that he explained to the petitioner that her plea constituted an admission of sufficient facts to substantiate the charges, and that the petitioner "has read and indicated to me that he/she fully understands all his/her rights and the defendant voluntarily and intelligently enters a plea of GUILTY-NOLO CONTENDERE to the charge(s). . . ." Id. Importantly, the Court granted that "it might be argued that what appears in the affidavit and certificate is the kind of boilerplate litany that [the United States Supreme Court in] Henderson does not tolerate. . . ." Id. However, the Court went on, "the state does not rely solely on that affidavit and certification to establish the defendant's comprehension of what she was doing." Id. *Page 14 
Rather, the Court took into account four additional factors. First, personal assurances made by the petitioner's trial counsel to the trial justice that the petitioner "read the affidavit carefully with me, very carefully, and very closely, and we have rehashed this and rehashed it again, and rehashed it back and forth, and she has finally agreed, voluntarily, that this is what she wants to do. . . ." Second, the trial justice's own inquiry of the petitioner whether "she had gone over the affidavit with her attorney `word-for-word'" and the petitioner's sworn response
 "that she was able to understand everything that she read, that she was satisfied that she had been properly represented by her attorney and that she had had a satisfactory and adequate opportunity to discuss all of the facts of the case with him and had made a complete disclosure to him of all the facts so that he could properly advise her."
Third, the Supreme Court took into account the prosecutor's recitation of the facts that the State was prepared to prove if the case went to trial. Lastly, the Court took notice of the trial justice's personal inquiry of the petitioner to determine whether she understood what the prosecutor had said. Id. Viewing the record as a whole and the circumstances of these six factors in their totality, the Court found that the record evidenced that the petitioner "understood the nature of the offenses charged and their essential elements;" therefore, the petitioner's plea was properly entered. Id.
One year after Williams, the Rhode Island Supreme Court addressed a petitioner's claim, upon an application for post-conviction relief, that his plea of nolo contendere was entered in violation of Rule 11.Feng, 421 A.2d at 1266. In examining the record the Supreme Court noted several critical factors that occurred during the plea colloquy. First, the Court noted that "the trial justice relied on an affidavit executed by [petitioner] Feng in which Feng averred that he understood and waived voluntarily the rights inhering in a plea of not guilty." Id. at 1267. The Court added that Feng's affidavit was "a form affidavit, available to attorneys in the Superior *Page 15 
Court. The form also contains a certification by Feng's [trial] counsel that he explained the affidavit to Feng." Id. at 1267 n. 11. Second, the trial justice personally questioned the petitioner about his reading and understanding of the affidavit, including the fact that the plea constitutes an admission "that the State has a capability of submitting sufficient facts to a jury to convict you" on each count. Id. at 1267.
Repeating its characterization in Williams, the Supreme Court stated that the affidavit used in that case and in Feng has "potential character as a `kind of boilerplate litany' not tolerated byHenderson v. Morgan." Id. at 1268. Consequently, the Court searched the record for more evidence that the plea colloquy satisfied Rule 11.Id. The Court found that
 "the questions posed by the [trial] court in this case explored only whether Feng had read the affidavit. The court did not inquire of Feng or his attorney if the attorney had, as stated in the affidavit, explained fully the nature of the charges and the consequences of a nolo plea to Feng. In light of the distinctions between this record and that in Williams, we must examine the record for additional circumstances indicating that an out-of-court explanation of the nature of the charges and the consequences of the plea did in fact occur." Id.
As a result, the Court took notice of the petitioner's educational accomplishments. According to the Court, "education is an important factor in our assessment of the validity of [petitioner's] nolo pleas."Id. The Court stated that the "ability to read and understand the English language does not invariably indicate" that an individual "will understand without further explanation the legal rights enumerated in the affidavit." Id. However, "a literate defendant with a college education" — as was the petitioner in Feng — "who is willing to swear to such a statement [that his attorney has explained to him the nature of the charge and the consequences of the plea] provides the trial court with a reliable indication that the out-of-court explanation, attested to in the affidavit, has actually occurred." Id. at 1268-69. Lastly, the trial justice specifically asked the *Page 16 
petitioner if he fully understood the rights identified in the affidavit and appreciated the consequences of pleading nolo contendere.Id. at 1269. The petitioner responded affirmatively. Id. From these facts the Court found that the petitioner understood the nature of the charges and the consequences of his nolo contendere plea when he entered it. Id.
More recently the Rhode Island Supreme Court considered an application for post-conviction relief in a factually similar situation as the matter presently before this Court. In State v. Frazar, the Supreme Court considered the petitioner's claim that his guilty plea was entered in violation of Rule 11. 822 A.2d 931, 933 (R.I. 2003) (Frazar II). The petitioner in that case was represented at his plea hearing by two attorneys. Id. Importantly, the petitioner had limited English proficiency at the time of his plea, thus, he was questioned and spoke through a court interpreter who translated between English and Spanish.Id. Through the interpreter the petitioner stated that he signed the plea agreement submitted on his behalf by his attorneys. Id. The Court noted that the petitioner signed two versions of the plea — one in English and another in Spanish. Id. at 933 n. 2. The interpreter told the Court that she translated the English version to the petitioner and that he appeared to understand the contents of the plea as translated.Id. at 933.
As the trial justices in Williams and Feng did, the trial justice who presided at Frazar's plea hearing personally questioned the petitioner.Id. at 933. The trial justice asked the petitioner various questions about the facts underlying the charges against him and instructed the petitioner that he was required to respond to the Court's inquiries.Id. For example, the trial justice asked Frazar whether he "possess[ed] a firearm-handgun" on the date alleged; whether he had "a license for possessing that handgun"; whether he "assaulted [the victim] with that handgun"; and whether he "point[ed] it at" the victim. Id. The trial justice then personally *Page 17 
informed the petitioner of the rights he was required to waive — the right to trial, the presumption of innocence, the right not to testify or present evidence, the burden upon the State to prove the charges beyond a reasonable doubt, the right to confront witnesses, and to right to appeal a conviction — and asked whether the petitioner understood the Court's explanation. Id. The trial justice also asked whether the petitioner was "forced or coerced" to plead guilty, to which the petitioner responded "No." Id. at 934. After reviewing these and other factors, the Supreme Court "conclude[d] that the evidence, though sparse, was sufficient to establish that Frazar knowingly and voluntarily gave up his rights." Id. at 936. Therefore, his plea was entered in compliance with Rule 11. Id.
 B Law and Analysis 1 Constitutional Requirements
In light of the fact-specific analysis mandated by the Supreme Court, this Court turns to the record evidence of Jorge's plea colloquy to determine whether his nolo contendere plea was entered in compliance with Rule 11. During the plea hearing the following exchange occurred between the trial justice, the court interpreter, the petitioner, the petitioner's trial counsel, Frederick Cass, and the prosecutor, John M. McLoughlin:
 "THE COURT: Mr. Cass, apparently the defendant wishes to withdraw a previously entered plea of not guilty to the charge and enter one of nolo contendere, is that correct?
 MR. CASS: That is correct, Your Honor.
 THE COURT: Would you ask Mr. Jorge, please, if he signed the document I'm showing? The document contains —
 THE DEFENDANT: Yes.
 THE COURT: The document contains all the rights he's giving up. They were explained to him by Mr. Cass personally and translated by you? *Page 18 
 THE INTERPRETER: Yes, Your Honor.
 THE DEFENDANT: Yes.
 THE COURT: Knowing he's giving up those rights, did he sign the document voluntarily?
 THE DEFENDANT: Yes.
 . . .
 THE COURT: He understands fully what we're doing here today?
 THE DEFENDANT: Yes.
 . . .
 MR. MCLOUGHLIN: If Your Honor please, if this matter were to go to trial, the state would present evidence to show that on days and dates between the 2nd day of May, 1984 and the 28th day of February, 1985, in Pawtucket, the defendant did engage in sexual contact with Sandra M. Jorge, a child under 13 years of age, in violation of 11-37-8.3 of the General Laws.
 THE COURT: By pleading nolo contendere to the charge as described to me by Mr. McLoughlin, he's pleading guilty, he's saying he did it; is that right?
 THE DEFENDANT: Yes.
 THE COURT: Also, you're giving up all the rights which are contained on this document which you explained. Does he have any questions at all about any of them?
 THE DEFENDANT: I have none.
 THE COURT: All right. They were all fully explained to him and he understands them?
 THE DEFENDANT: I understand.
 . . .
 THE COURT: And he understands if I do what is suggested, he's giving up his right to a trial?
 THE DEFENDANT: Yes.
 THE COURT: The Court finds the defendant has the capacity to understand the nature and consequences of his plea of nolo contendere . . . including but not limited to the waiver of his constitutional rights. . . . The Court therefore finds the plea is made voluntarily, intelligently and with full knowledge and understanding of the consequences."
 (Tr. 1-3, 5.)
In sum, the transcript of the plea colloquy reveals that the trial justice engaged the petitioner in a discussion of the plea. The trial justice asked the petitioner whether his attorney explained to him the "all the rights he's giving up," whether "he sign[ed] the document voluntarily," and *Page 19 
whether he understood "what we're doing here today." Id. 1, 2. Jorge answered affirmatively to
each inquiry. Id. Presumably the document referenced by the trial justice was the standard plea form used in the Superior Court to enter a plea of nolo contendere or guilty.[6] The prosecutor explained the facts that the State was prepared to prove at trial and the trial justice asked the petitioner whether he understood that by entering a nolo contendere plea "he's pleading guilty, he's saying he did it."Id. 3. Jorge responded affirmatively. Id.
This Court must now determine whether the plea colloquy was sufficient to ensure that the petitioner was "fully aware of the nature of the charge and the consequences of the plea." Williams, 404 A.2d at 819. The record indicates that the petitioner and his attorney signed a "Request to Enter a Plea of Nolo Contendere or Guilty." This standard form agreement is comprised of generic language applicable to any offered plea agreement plus blank spaces in which to write the name of the accused, the specific charges involved, and other identifying information. The form states that a plea of nolo contendere is "for all purposes the same as a plea of GUILTY [sic]," that entry of a plea constitutes "admitting sufficient facts to substantiate the charge(s)," and explicitly enumerates the rights waived by entry of a plea. The form also states that the accused swears that his attorney discussed the contents of the document with him and that he "understand[s] it completely." The State argues that the petitioner's responses to the trial justice's inquiries regarding the petitioner's understanding of the contents of the plea form and the contents of the plea form itself "confirms the knowing and voluntary nature of the plea." (State's Supplemental Mem. 3.)
The Supreme Court has repeatedly stressed the limits of reliance on the explicit contents of similar documents. In Williams andFeng, the Court described the contents of similar forms as "boilerplate litany" that without more was insufficient to satisfy the constitutional *Page 20 
requirements implicated by Rule 11. Feng, 421 A.2d at 1268;Williams, 404 A.2d at 820. In both cases, the Court interpreted a decision by the United States Supreme Court in which the nation's highest court agreed with the criminal defendant's characterization of the elements read to him as a "ritualistic litany of the formal legal elements of an offense." Henderson, 426 U.S. at 644. TheHenderson Court found that such an explanation of the "technical elements" of a charge failed to satisfy the constitutional requirement that a plea be entered voluntarily and intelligently. Id. The plea form signed by the petitioner, and presumably referenced by the trial justice, bears striking resemblance to those documents which the Rhode Island Supreme Court has found insufficient, without more, to satisfy Rule 11. Feng, 421 A.2d at 1268; Williams, 404 A.2d at 820. Consequently, the State's reliance on the contents of the plea form is misplaced. This Court cannot accept the State's contention that the petitioner's statement that he understood the plea form "confirms the knowing and voluntary nature of the plea." (State's Supplemental Mem. 3.)
Since the contents of the plea form alone are insufficient to satisfy Rule 11, the Court must examine the remainder of the record. The State supports its contention that the petitioner entered his plea knowingly and intelligently by pointing to the petitioner's responses to the trial justice's inquiries about his comprehension of the plea form. (State's Supplemental Mem. 3.) As the State notes, the trial justice directed several questions at the petitioner or the interpreter. Specifically, the trial justice asked the petitioner or the interpreter the following questions related to the petitioner's comprehension of the plea: did "he sign the document"; "did he sign the document voluntarily"; were "all the rights he's giving up. . . . explained to him by Mr. Cass personally and translated by you"; did he "understand fully what we're doing here today"; and was he "pleading guilty . . . saying he did it". (Tr. 1-3, 5.) To all of these questions the *Page 21 
petitioner responded affirmatively, all but once by saying "Yes."Id. In addition, the trial justice asked, "[d]oes he have any questions at all about any of them" with regard to the constitutional rights waived in entering a plea. Id. 3. The petitioner responded "I have none." Id.
The Court's duty is to determine whether this interchange was sufficient to ensure that Jorge voluntarily and intelligently entered his plea. In reaching this determination, the Court is guided by the Supreme Court's instruction in Feng that a plea colloquy does not comply with Rule 11 if "[t]he questions posed by the court . . . explored only whether [the accused] had read the affidavit." 421 A.2d at 1268. The trial justice who received Feng's plea asked Feng the following questions: "Is that your signature [on the affidavit]?"; "Did you fully understand the rights that you have as contained in that document?"; "Do you understand the consequences of giving up those rights?"; "You appreciate the fact that if I accept your plea of nolo as to each of these counts, all that remains for the Court to do is to impose sentence?"; "Do you appreciate the fact that the probability is that the Court may send you to jail?"; and "Mr. Feng, do you consider that the State has a capability of submitting sufficient facts to a jury to convict you on every one of the counts?" Id. at 1267. To all of these questions Feng answered by saying either "Yes, sir," or "Yes, your Honor." Id. These questions — relating to Feng's comprehension of the plea process, including the consequences of his plea and his admission that the State had sufficient facts to convict him on the charges — was deemed insufficient, without more, for Rule 11 purposes.Id. at 1268.
Since these questions are similar to the questions that the trial justice asked Jorge during his plea hearing, this Court now follows theFeng Court's instruction that it "must examine the record for additional circumstances indicating that an out-out-of court explanation of the nature of the charges and the consequences of the plea did in fact occur." Id. In reaching its *Page 22 
determination that Rule 11 was satisfied, the Feng Court noted that the fact that Feng, a "college-educated defendant who [wa]s willing to swear" that "his attorney explained to him the charge and the consequences of the plea," was "an important factor." Id. The same cannot be said of Jorge. There is no indication in the record that he received a college education. Indeed, the record is silent as to his education or any other attribute that would "invariably indicate that he will understand without further explanation the legal rights enumerated in the affidavit." Id. Consequently, the Court cannot rely on Jorge's affirmative response to the trial justice's question regarding whether his rights were "fully explained to him and he understands them?" (Tr. 3.) Furthermore, it is significant that there is no assurance to be found in the transcript by Jorge's trial counsel that counsel enumerated these rights to Jorge out-of-court.
Moreover, Jorge does not meet even the minimum criterion set out by the Feng Court for constitutionally sound reliance on the petitioner's affirmative response to questions about his comprehension of a plea form — namely, the "ability to read and understand the English language."421 A.2d at 1268. As the Feng Court noted, even English language literacy, the language in which the plea form is written, "does not invariably indicate that he will understand without further explanation the legal rights enumerated in the affidavit." Id. Indeed, in Frazar, the Supreme Court noted that a non-English speaker who pled through an interpreter was presented with a plea form in English, which was translated by the interpreter, and another plea form in the accused's native language.822 A.2d at 933 n. 2. In addition, the interpreter "told the trial justice . . . that [Frazar] appeared to understand its contents." Id. at 933. Though Jorge's plea colloquy occurred with the benefit of a court interpreter who translated between English and Portuguese, the record does not indicate that the plea form was itself presented to Jorge in a *Page 23 
language he understood. Also unlike Frazar, the transcript of Jorge's plea colloquy fails to provide any statement by the interpreter that Jorge understood the plea form.
In spite of the court interpreter's translation of the plea form inFrazar, the trial justice in that case did not stop the Court's inquiry of Frazar upon learning of the interpreter's translation, the additional plea form, and the interpreter's statement that Frazar appeared to understand the contents of the form. Id. at 933-34. Rather, the trial justice proceeded to extensively question Frazar about specific facts and constitutional rights. Id. In that case, the trial justice asked Frazar various questions about the facts underlying the charges against him and instructed the petitioner that he was required to respond to the Court's inquiries. Id. at 933. The trial justice then personally informed the petitioner of the rights he was required to waive and asked whether the petitioner understood the Court's explanation. Id. at 934.
The transcript of Jorge's plea colloquy indicates that the matter before this Court is markedly different from the record inFrazar. The trial justice who presided at Jorge's plea colloquy referenced "all the rights which are contained on this document" but only explicitly enumerated one, the right to trial. (Tr. 3, 5.) Importantly, the trial justice did not personally enumerate nor direct anyone else to enumerate any of the other specific constitutional rights waived by a plea. The transcript reveals that at most the trial justice asked the court interpreter whether "all the rights he's giving up . . . were explained to him [Jorge] by Mr. Cass personally and translated by you?" (Tr. 1-2.) To these questions — whether the petitioner's trial counsel explained the rights to Jorge and whether the interpreter translated those rights — the interpreter responded "Yes, Your Honor."Id. 2. Jorge then added, "Yes." Id. It is unclear which of the two questions posed to the court interpreter the petitioner's "Yes" response was intended to answer. This quick exchange — consisting of a mere five lines of the transcript — about the *Page 24 
substance of the constitutional rights waived by a Rule 11 plea cannot be said to have satisfied the requirement that the trial justice "should advise and admonish the defendant about the nature of the charges . . . [and] ascertain whether [the] criminal defendant was made aware of the consequences of the plea and the rights that the defendant was giving up." Thomas, 794 A.2d at 993.
Furthermore, the trial justice did not explain the charges to Jorge nor does the transcript reveal that the trial justice received an assurance that the petitioner's trial counsel adequately explained the charges to him. In Frazar, the trial justice clearly explained to the accused the charge he faced, including the elements of the charge and the facts underlying the charge. 822 A.2d at 933. In Feng, the Supreme Court found that the trial justice did not explain the charges to the accused, but found that Feng's sworn statement that his trial counsel fully explained the charges to him out-of-court satisfied Rule 11 because Feng was college educated. 421 A.2d at 1268-69. Similarly, inWilliams the Supreme Court found that the record "does not affirmatively show that the trial justice engaged in an extensive interchange with the accused about whether she fully understood the nature of the charges."404 A.2d at 820. Nonetheless, the Williams Court found that Rule 11 was satisfied because the record revealed "assurances received by the trial justice from counsel that defendant had `read the affidavit carefully with me, very carefully, and very closely, and we have rehashed it back and forth. . . ." Id. The Williams Court also noted that the accused in that case assured the trial justice that "she had gone over the affidavit with her attorney `word-for-word.'" Id.[7]
No such explanation or assurances occurred at Jorge's plea hearing. Indeed, the trial justice merely alerted the court interpreter that "Mr. McLoughlin [the prosecutor] briefly will *Page 25 
give me some facts which I'll ask you to translate." (Tr. 2.) Immediately thereafter the prosecutor recited the facts that the State was prepared to prove if the matter were to go to trial and provided the statutory citation of the crime charged. Id. 2-3. Later the trial justice reiterated that "Mr. McLoughlin gave me the fact out of which the charge arose. . . ." Id. 3.
Accordingly, the Court finds that Jorge's nolo contendere plea was not entered voluntarily and intelligently. Consequently, the petitioner's plea entered on May 1, 1986 is vacated.
 2 Other Claims Made by the State
The State further urges the Court to deny the petitioner's application for post-conviction relief because the application is "just a transparent effort to avoid deportation." (State's Supplemental Mem. 1.) The State adds that deportation is a collateral consequence of Jorge's plea, thus, beyond this Court's jurisdiction. Id. Though the State correctly notes that "[t]he possibility of deportation . . . is a collateral consequence . . . beyond the authority of the trial justice," it mischaracterizes this proceeding as one that solely concerns deportation. Tavarez v. State, 826 A.2d 941, 944 (R.I. 2003). The State would have the Court deny the petitioner's application for no other reason than that this claim might be the only legal option preventing the petitioner's deportation.
This Court does not accept the State's invitation. As the Court has clearly expressed, the petitioner's claim upon an application for post-conviction relief that his plea was entered in violation of Rule 11 involves important constitutional rights. Moniz, 933 A.2d at 695. Therefore, this Court would be remiss if it failed to afford the petitioner the opportunity to be heard and considered on the merits of that claim. *Page 26 
Lastly, the State also alleges that the petitioner "fail[ed] to provide any evidence of how specifically Rule 11 was allegedly violated or how he was prejudiced thereby." (State's Supplemental Mem. 1-3.) Assuming, arguendo, that the State had correctly noted the petitioner's failure to specify a Rule 11 violation, the State's claim that a prejudice requirement exists is wholly without support. The State has not identified a prejudice requirement imposed by the Constitution, statute, or court rule. A mere passing reference to an argument, without meaningful elaboration, will not suffice to merit the Court's consideration. State v. Day, 925 A.2d 962, 974 n. 19 (R.I. 2007).
 Conclusion
After reviewing the record, the Court finds that the petitioner's nolo contendere plea was not entered in compliance with Rule 11. Accordingly, the petitioner's application for post-conviction relief is granted. Counsel shall submit an appropriate order for entry.
[1] As the trial justice is no longer a member of the Rhode Island Superior Court, this Court considers the matter pursuant to Rhode Island Superior Court Rules of Practice 2.3(d)(4).
[2] The only difference between the version of § 11-37-8.3 in effect at the time of petitioner's plea and the version currently in effect concerns the maximum age of the victim. Prior to the enactment of P.L. 1988, ch. 219, § 1, coverage under the statute was limited to persons "thirteen (13) years and under." Public Law 1988, ch. 219, § 1 raised the age to 14 years. This difference is of no consequence to the matter presently before this Court.
[3] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) "abolished the separate proceedings for excludable and deportable [non-citizens] by replacing them with a single form of removal proceedings." David Weissbrodt, Immigration Law and Procedure ina Nutshell § 8-1 (4th ed. 1998).
[4] In Smith, the First Circuit considered a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. 76 F.3d at 428. The Rhode Island rule is substantially similar its federal counterpart which provides: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).
[5] Though the Williams Court enumerated these rights only in the context of a guilty plea, the Moniz Court explicitly stated that these rights were waived by a defendant who enters a plea of guilty or nolo contendere. Moniz, 933 A.2d at 695; Williams, 404 A.2d at 818. Moreover, the Rhode Island Supreme Court's explication of the constitutional rights waived by a defendant who enters a plea of guilty or nolo contendere recognizes more than the three rights identified by the United States Supreme Court — the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers.Godinez v. Moran, 509 U.S. 389, 397 n. 7 (1993).
[6] The trial record includes a copy of this plea form signed by the petitioner and his trial counsel, and dated May 1, 1986. Attached to this form is the "Certificate of Judge" signed by the trial justice who presided at Jorge's plea hearing.
[7] In a recent decision the Supreme Court found that the "trial justice clearly explained the charges" to the accused. Moniz v.State, 933 A.2d 691, 696 (R.I. 2007). However, the Supreme Court did not provide excerpts from the plea hearing transcript. Id. Therefore, this finding is of limited assistance to this Court's present analysis.